STATE OF MISSISSIPPI, ON THE RELATION OF THE DISTRICT ATTORNEY, *v.* D. W. SIMMONS, ASSESSOR.

1. MANDAMUS. *Assessment. Property escaping taxation. Code* 1880, §§ 486, 509, 513.

Section 486, code 1880, requires the assessor to assess property that has escaped taxation in former years. Section 509 authorizes him to add property to the roll after returning it to the board of supervisors, and before final action thereon. After that, by § 513, the *collector* is required to assess all property left unassessed. Under these provisions it is the duty of the assessor, at any time, to assess property that has escaped taxation for former years. This he may be compelled to do by mandamus, and it is immaterial that when the suit is brought the time has passed for him to make assessments for the current year.

2. EXEMPTION FROM TAXATION. *Charter strictly construed.*

The words of a charter are to be considered rather as those of the incorporators than of the state. Exemptions from taxation must be found in the language employed, construed most favorably to the state. An exemption not clearly given, or existing by necessary inference, cannot be allowed.

3. SAME. *Provision in charter not a contract. Taxation of capital stock.*

A provision in the charter of a corporation that the "real and personal property of said company shall be subject to the same taxes, and to be

assessed and collected in the same way that the real and personal prop-
erty of individual citizens is assessed and taxed, and not otherwise,"
cannot be construed as a contract that the capital stock of the corpora-
tion will never be taxed.

4. TAXATION OF CORPORATION. *Value of capital stock. Code* 1880, ? 498.

In assessing a corporation for former years in which it has escaped taxa-
tion, under ?498, code 1880, the par value of the capital stock is not
controlling. The same is to be assessed " at its market value." Accrued
profits, the franchise, real and personal property, and other factors af-
fecting the value of the stock, are to be considered. The assessment be-
ing made *nunc pro tunc*, the subject and the burden are to be considered
just as they would have been if the assessments had been made at the
proper time.

5. SAME. *Taxes paid on property. Deduction therefor. Code* 1880, ? 498.

The Mississippi Mills, an incorporated company under the laws of this
state, is within the terms of ? 498, code 1880, which provides for taxing
the capital stock of any "bank or other joint-stock company;" and un-
paid taxes on its stock for former years are collectible, notwithstanding
the fact that it has paid taxes on its real and personal property for such
years; but the value of the property so paid on is to be deducted from
the valuation of the capital stock. If the value of the property paid on
was duly ascertained, it is conclusive.

6. PROPERTY EXEMPTED. *Valuation of stock reduced. Laws* 1872, *p.* 65; 1882, *p.* 84.

Although it is the capital stock, not the property as such, of the corpora-
tion that is taxable, if it was embraced by the act of 1872 (Laws, p. 65),
or the act of 1884 (Laws, p. 84), exempting from taxation certain prop-
erty used in manufactures, effect will be given to said acts by allowing
the corporation, in paying back taxes, to deduct the value of the prop-
erty so exempted from the value of its capital stock

7. EQUALITY OF TAXATION. *Restricting words of statute. Construction.*

Unless plainly expressing a different purpose, a statute will be construed
as intended to levy a single tax upon property, though the words of the
law would naturally bear a broader meaning. The courts will, as far as
possible, without doing violence to the language used, restrain the mean-
ing of a statute apparently authorizing double taxation.

8. TAXATION OF STOCK. *Domestic corporation. Share-holders not taxable.*

Under our statutes a domestic corporation is taxable with the value of its
capital stock, and individuals are not taxed on the shares of such stock
held by them.

FROM the circuit court of Copiah county.
HON. J. B. CHRISMAN, Judge.

*R. N. Miller,* for appellant.

The law requires that when an assessor shall discover that any person or property has escaped taxation for former years, he shall assess such person or property. Code 1880, § 486; Code 1892, § 3768. The president or cashier of any bank or other joint-stock company liable to taxation is required, on or before the first day of June every year, to deliver to the assessor of the county a written statement of the stock paid in, and its market value. Code 1880, § 498; Code 1892, § 3758.

Section 468, code 1880, which is also carried forward in the new code, specifies that certain property, *and no other,* shall be exempted from taxation, and the exemption does not include the capital stock of corporations.

Section 484, code 1880, which is § 3751, code 1892, providing for assessment-rolls, requires that there shall be a heading for "amount of stock or shares in any corporation or company."

Sections 472, 473, code 1880, requires the stock of all corporations to be taxed, unless the same is exempted by law.

From the above provisions, the clear legislative intent to tax corporate stock is deducible. All property in the state is taxable, unless expressly exempted. Taxation is the rule; exemption is the exception. *Railroad Co.* v. *Thomas,* 65 Miss., 553; Cooley on Taxation, 204; Burroughs on Taxation, 132.

There is no intimation by the legislature of exemption to the Mississippi Mills of its stock or shares. On the contrary, the thirteenth section of the charter requires that its real and personal property shall be subject to taxation.

Certain property of manufacturing companies was exempted at different periods, *but never their stock.* Laws 1872, p. 65; Laws 1882, p. 84; *Mississippi Mills* v. *Cook,* 56

Miss., 40. As the state, in charity, exempted part of its property for stated periods, the contention is, now, that it was under some sort of contract to give the appellee the tax on its stock.

Taxation of its property against the corporation, and taxation of the stock against the share-holders, is not duplicate taxation. The capital is owned by the corporation, while the shares are owned by individuals. Burroughs on Taxation, 170, 171; *Ib.*, 178, 185; *Van Allen* v. *Assessors*, 3 Wall., 573; 4 *Ib.*, 244. See also Cooley on Taxation, 169, 176 *et seq.*; 1 Cush., 142; 2 Jones' Eq., 396; 21 N. J., 449; 26 *Ib.*, 181; 39 Pa., 251; 42 *Ib.*, 42; 47 *Ib.*, 106; 39 Ill., 130; 12 Allen, 75; 9 Yerger, 490; 18 Wall., 206; *Attala Co.* v. *Kelly*, 68 Miss., 40.

No system of taxation has ever been devised which does not result in apparent double taxation in some form. This will be true until the science of government reaches perfection; but taxation is not valid because it results in imposing unequal burdens. See Cooley's Con. Lim., 513; 90 Am. Dec., 149; 23 Am. R., 461; 32 *Ib.*, 688; 33 *Ib.*, 688.

If it be true that corporations are not embraced by § 498, code 1880, the owners of shares are taxable under the general revenue law, especially § 473. On this point see Burroughs on Taxation, 155.

It is manifest, when we look at the whole scheme of our revenue system, taking §§ 468, 472, 473, 474, 498, code 1880, all together, that the legislature intended to embrace corporations, and that it never intended to limit taxation to shares of technical joint-stock companies. A joint-stock company is taxable under the statute as a company incorporated. 100 Mass., 531.

The state may tax the property of the corporation or its franchise, and at the same time the shares of its stock to the holders thereof. Cooley on Taxation, 43, 44, 164, 274; Burroughs on Taxation, 90.

The state may tax non-resident holders by making the

corporation its collector. Cooley on Taxation, 433, note 1; 3 Am. R., 407. The *situs* of shares of stock is always where the corporation is located. 1 Potter on Corp., §§ 189, 193; Burroughs on Taxation, 189; Cooley on Taxation, 43, 44, 274; 4 Am. St. R., 752; 23 Am. R., 460; 9 Wall., 353; 19 *Ib.*, 490; 49 Ill., 318; 2 Gill., 487; 25 Ohio, 1.

I call special attention to the fact that by § 9 of the charter of Mississippi Mills it has a lien on all stock for any debt of the share-holders to the corporation. On this point see Potter on Corp., § 267; Beach on Railroads, §§ 390, 393.

The constitutional provision that taxation shall be equal and uniform, does not affect the right of the state to tax the corporation on its property and the share-holders on the stock. Cooley on Taxation, 124, 132, 144, 174; Burroughs on Taxation, 22, 61, 71.

If the taxes cannot be collected until assessed, the assessor should be compelled, by mandamus, to make the assessment.


*J. S. Sexton,* for appellee.

1. The petition in this case was filed October 6, 1891, at which time the assessor had no power to add to or to take from the roll. Section 509, code 1880, was the only authority for the assessor to add any thing to the roll after its return. By § 513 it was provided that after the roll had passed from the hands of the assessor and been approved, the collector should assess and collect taxes on property left unassessed. Mandamus will not lie to compel the doing of an act which the officer is not under obligation to perform. High's Ex. L. Rem., 35, 39.

Nor will it be granted to compel the performance of an official act when substantial doubt exists as to the duty to perform it. *Ib.*, 40 It is always a complete answer that the respondent has no authority to do the act. Cooley on Taxation, p. 726.

2. To tax the property of the Mississippi Mills, as provided by the charter, and also tax the shares of stock, would

manifestly be duplicate taxation, which is never allowed unless plainly required by legislative enactment, and there is no such enactment in this state. There is a sort of indirect taxation, which is admissible, and which, in one sense, is duplicate taxation, as where the duplicate tax is paid by different parties. A construction of tax laws will not be adopted which will subject the same property to be twice charged for the same tax, unless required by the express words of the statute, or by necessary implication. Cooley on Taxation, p. 227. Courts do their utmost to prevent double taxation, and will construe a statute so as to avoid such result. Cook on Stockholders, § 567, and authorities cited.

The shares of the stock of Mississippi Mills cannot be separated from the property of the company or its capital without embracing the shadow and rejecting the substance. The shares have no value, except that they represent so much of the capital of the corporation. Whatever technical distinction may be drawn between taxing a stockholder on account of his interest, and taxing the corporation on account of its property, the result is the same.

By duplicate taxation is understood the requirement that one person or subject shall directly contribute twice to the same burden, while the other subjects of taxation, belonging to the same class, are required to contribute but once. We do not see how a tax on a merchant's stock, distinctively by value, can be supported when, by the same authority, the same stock is taxed as a part of his whole property. The same may be said of the tax on the property of a corporation, and also on the capital which is invested in the property. Cooley on Taxation, p. 225.

It will be seen that § 468, code 1880, does not undertake to tax any thing, but contains the exemption of certain property. Section 473 of said code has no application, because the Mississippi Mills is neither an "incorporated bank" nor "other company," within the contemplation of that statute. When there are general words following particular or spe-

cific words, the former must be confined to things of the same kind. Sutherland on Stat. Con., § 268; 63 Miss., 600. Besides, this section only provides the place where stock shall be taxed, if taxable at all.

Section 478, code 1880, not only fails to contain any provision hinting at an assessment of this stock, as such, but contains a clear intimation that such stock is not liable to taxation.

Section 498 can have no application, for the reason that the Mississippi Mills is neither a bank nor joint-stock company. It is a corporation pure and simple. See Cook on Stockholders, § 544; Anderson's Law Dic., title Joint-stock Companies.; 2 Lawson on Rights, Rem. & Prac., p. 1281.

Again, the "joint-stock companies" referred to in said section, under the rule of construction mentioned, must be confined to companies of the same nature as banks. *Ice Co.* v. *Greenville*, 69 Miss., 86.

Grant that taxation is the rule, and exemption the exception, *double taxation* is not the rule, and exemption from it is not the exception. Appellee being required to pay taxes on its property, and all such taxes having been paid, no statute can be pointed to under which the stock of the corporation is taxable as such. The statutes referred to by counsel do not authorize this, and, if a statute could be found which would, the same would be plainly unconstitutional.

3. Under the laws of this state, approved April 1, 1872, April 17, 1873 and March 9, 1882, all the property of appellee embraced in the contemplation of such laws was exempted from taxation; and, the property being exempt, the shares of the stock, which represent the property, are also exempt. The petition admits that appellee has paid taxes on its property liable to taxation. Whether an exemption of corporate property from taxation exempts its capital stock, depends largely on the words used in the statute. See Cook on Stockholders, § 568. The words used in the act of 1872 were as broad as the English language contains.

It has been decided that an exemption of the corporation from taxation, either on its franchise or capital stock or property, exempts, by implication, the shares of stock. 23 N. J. L., 484, 532; 7 Dana (Ky.), 338; 17 Ind., 48; 3 How. (U. S.), 133; 22 Fed. Rep., 75.

Where the shares of stock are exempt, it is held that the property of the corporation is also exempt. Cook on Stockholders, 568; 3 Zabraskie, 484; 4 *Ib.*, 402; 3 How. (U. S.), 133; 95 U. S., 104, 679; 31 Com., 106; 40 *Ib.*, 491; 21 Gratt., 604; 6 Gill., 288.

4. Under the thirteenth section of its charter the capital stock of appellee could never be assessed. This provides how its property shall be assessed, and constitutes an inviolable contract on the part of the state. 52 Miss., 127; 53 *Ib.*, 246; Cooley on Taxation, 71.

Notwithstanding the provision of the constitution that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals, it is competent for the legislature to contract with a corporation, as it did in this case, that its property shall be subject to the same taxes as the property of individual citizens, and not otherwise. There is nothing in the case of *Mississippi Mills* v. *Cook* to suggest a want of power on the part of the legislature to make any sort of an agreement with the corporation in reference to the method or manner of its taxation.

By comparison of § 3 with the preamble of the charter of appellee, it will be observed how literally true it is that to tax the property of the corporation, and then to tax its shares, would be duplicate taxation, and violative of the thirteenth section above referred to.

5. Under §§ 112, 181 of the constitution of Mississippi it was not permissible to tax the real and personal property of appellee, and tax its shares and stock also. Legislation attempting to do this would be violative of these constitutional provisions. *Frederick Co.* v. *Bank*, 48 Md., 117; *San Francisco* v. *Mackey*, 21 Fed. Rep., 539; *Burke* v. *Badlans*, 57 Cal.,

594. I call special attention to the fact that the constitutions of California and Maryland, construed in these cases, are similar to our own, as explained in the opinions of Judges Campbell and Simrall in *Mississippi Mills* v. *Cook*. It is useless to discuss decisions from courts of other states where the statutes and constitutional provisions are entirely different.

There is an effort on the part of opposite counsel to so distort § 498, code 1880, as to hold that it requires the assessor to assess the corporation for all its shares of stock, less the shares owned by Oliver's estate, and make the Mills collector of the same by having it pay the taxes, and charge the same on the shares of stock to the respective holders. It is sometimes thought proper to fix the *situs* of the shares at the domicile of the corporation, in order to reach the shares of stock for the purpose of taxation. It is impossible to make this statute serve such purpose, because it is not applicable to the case in point, and no statute would be valid which undertook to tax the shares anywhere, when the property, in which the capital represented by such shares had been invested, was already taxed in another form.

COOPER, J., delivered the opinion of the court.

On the sixth day of October, A.D. 1891, the state, upon the relation of its district attorney, exhibited its petition for mandamus against W. T. Matheney, who was then assessor of Copiah county, to compel him to place upon the assessment-rolls of the county for the then current year, as the property of William Oliver, deceased, forty-three shares of the capital stock of the Mississippi Mills, an incorporated company doing business in said county, and to assess to the said company 301 shares, the same being the balance of the stock in said company; and also to return said stock as the property of said estate of Oliver and of the company, which had escaped taxation for the ten years next before the year 1891. The petition alleges that said stock is, and during all

the time for which it is sought to have it assessed has been, of the par value of $1,000 per share, but of the actual market value of $5,000 per share.   It is further averred that William Oliver, during his life, was the owner of forty-three shares of said stock on which no taxes have ever been paid, and that no officer of the said company ever made out and delivered to the assessor a statement of the number of the shares of the stock, and its market value, as by law they were required to do.

The prayer of the petition is that a mandamus may issue to the assessor, commanding him to assess the estate of William Oliver with the market value of forty-three shares of the capital stock of the Mississippi Mills, and to assess to the company its whole stock of 344 shares, less the forty-three shares assessed to the estate of Oliver.

By the act of incorporation of the Mississippi Mills, its capital stock was fixed at $250,000, with the right of the stockholders to increase it to $1,000,000.

The thirteenth section of the charter is as follows : " That the real and personal property of said company shall be subject to the same taxes, and to be assessed and collected in the same way, that the real and personal property of individual citizens is assessed and taxed, and not otherwise."

By an act of the legislature, approved April 1, 1872 (Laws, p. 65), it was recited that great advantage would accrue to the state by the encouragement of manufactories; and, to that end, it was provided that the state would exempt from taxation for the period of ten years all companies not then in existence, whose capital stock should be not less than $10,000 paid in; and by an act, approved April 17, 1873, the provisions of the act of April 1, 1872, were extended to the Mississippi Mills, and made a part of its charter.

The following are some of the provisions of law in reference to taxation as found in our codes :

" The president and cashier of any bank in this state, or other joint-stock company, the capital stock of which is tax-

able, shall, on or before the first day of June in every year, deliver to the assessor of the county in which said bank or company is located, a written statement, under oath, of the capital stock paid in, and its market value, except such as is not liable to be taxed; and, on failure to furnish such statement, the tax shall be assessed on the whole capital authorized by the charter." Code 1880, § 498; Code 1892, § 3758.

"All incorporated banks or other companies liable to taxation on their capital stock, shall be assessed for said stock in the county in which the principal office or place of transaction of business is situated; and, if there shall be no such office or principal place of business, then in the county or counties in which the business of such company shall be carried on." Code 1880, § 473; Code 1892, § 3750.

" When the assessor shall discover any persons or property that have escaped taxation in former years, he shall assess such persons and property for such former years, distinctly specifying the fact of such escape and discovery by him on a page or pages of his assessment-roll, separate from the assessment for the current year." Code 1880, § 486; Code 1892, § 3768.

" When the assessor shall assess for a former year, he shall give notice in writing thereof to the person assessed or whose property is assessed, if such person is a resident of the county." Code 1880, § 487; Code 1892, § 3769.

" The assessor, after returning his roll, may add any person or thing to it at any time before action by the board."
·  ·  ·    Code 1880, § 509; Code 1892, § 3800.

" The collector shall assess and collect taxes on all land liable to taxation left unassessed by the assessor, and on all land that may become liable to taxation before the next assessment;" and he shall also assess such other persons and property as he may find unassessed by the assessor."  .  .  .
Code 1880, § 513; Code 1892, § 3804.

At its meeting in August, the board of supervisors is required to examine the assessment-roll, to hear all objections

thereto, and, when corrected, to approve the same. Code 1880, § 503; Code 1892, § 3788.

The assessor demurred to the petition on many grounds, which will be noted in their order. The demurrer was sustained and the petition dismissed, and, from that judgment, the state appeals.

The first objection argued by counsel in this court (the third in order of the grounds of demurrer) is that the petition asks that the assessor may be required to perform an act which he has no legal power to do. The position of counsel on this question may be briefly stated, thus: The assessor may add to his roll for the current year any person or thing found to have been omitted at any time before action by the board of supervisors. Code of 1880, § 509. But the board was required by law to complete its examination of the roll at its August meeting, and it must be presumed to have done so. The petition was not filed until October 6, at which time the roll for the current year had passed from the control of the assessor, and it was then the duty of the collector, and not of the assessor, to add persons and property to the roll. Code of 1880, § 513.

The sufficient reply to this objection is that the petition also sought to compel the assessor to perform a duty which yet rested on him—that of assessing the capital stock of the corporation which had escaped taxation for antecedent years.

The demurrer was, in this view, too broad, and should have been disallowed, if not sustainable on other grounds. But this ground of demurrer is not greatly relied upon by the appellee.

The defense principally relied on is that the corporation has already been taxed upon its real and personal property, and cannot be assessed with its capital stock for taxation for the following reasons: 1. Because it is protected by its charter from taxation of its capital stock. 2. Because a tax upon its property and also upon its capital stock would be double taxation, and, as such, obnoxious to those provisions of our

constitution providing for equality and uniformity of taxation. The contention of counsel is that, by the thirteenth section of the charter of the company, an inviolable contract was entered into between the state and the incorporators that the capital stock of the company should never be subjected to taxation, but that the limit of taxation should be the real and personal property, assessed and taxed as the property of individual citizens should be assessed and taxed. The immunity claimed, if it exists at all, can be found only by a strained inference, or by an interpretation of the charter at war with the settled and universal rules of construction applicable to legislative grants.

The rule is well settled that the words of a charter are to be considered rather as those of the incorporators than of the state; that exemptions, when claimed, must be found to exist from the language employed, construed most strongly against the party and most favorable to the state, and that no exemption not clearly given, or existing from necessary inference, can be allowed. Counsel assumes that the words " real and personal property," used in the thirteenth section of the charter, mean real and personal property other than the capital stock or franchise of the corporation; and, having thus excluded these from liability to taxation as real or personal property, finds an implied exemption of it from taxation upon the rule that the legislature, having stipulated how the real and personal property should be taxed, thereby bound the state not to tax the franchise. This construction carries the rule *expressio unius est exclusio alterius* beyond all reasonable limits, and its application would be to subvert or ignore the fundamental principles of construction of charters. We find nothing in the charter precluding taxation of the capital stock of the company.

It seems to be conceded by counsel for appellant that the legislative purpose is and has been to tax both the capital stock of the company and also its real and personal property, and his argument is addressed to the right of the state to

tax not only the property of the corporation and its stock, but, in addition thereto, to tax the shares of the stock to the stockholder. Our examination of the statutes has led to a conclusion which renders unnecessary a consideration of the question of the existence of this power. Whether the power does or does not exist, the rule of construction is universal that no such purpose is to be attributed to the state; and, to prevent such results, the courts will, as far as possible, without doing violence to the words of the law, restrain such provisions of statutes as apparently authorize a double burden to be laid upon the same property or persons. Keeping constantly in view the justice of equality of taxation, and assuming the legislative will to be that no other result shall be reached by the plan it provides, the courts have uniformly construed revenue acts, unless unequivocally and clearly expressing a different purpose, as intended to levy a single tax only upon the same property, even though the words of the law would ordinarily and naturally bear a broader and more general meaning. In *Bank* v. *Nashua*, 46 N. H., 389, the rule is well expressed as follows: "It is a fundamental principle in taxation that the same property shall not be subject to a double tax, payable by the same party, directly or indirectly; and when it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes, it has been held to follow, as a legal conclusion, that the legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it was to be taxed a second time." In *Smith* v. *Burley*, 9 N. H., 423, this rule of construction was applied to a case where the property of a corporation was taxable to the corporation in the town where it was situated, and the attempt was to collect a tax assessed on a stockholder in the town where he resided, under the provision of a statute which made stockholders in corporations liable to be taxed for their stock in the places where they resided. The statute

then in force provided that " all stock in any corporation or company on which any income was received, or any dividend made, should be taxed to the owner in the town where he resided." It was held, notwithstanding these general terms making the stock taxable to the stockholders, that, inasmuch as the property of the corporation was legally taxed to the corporation under the law then in force, the stockholder could not be taxed for his stock in the place where he resided, because that would indirectly amount to a double taxation of the same property." The decision in the case from which we have quoted held that, when the corporation was taxed on its capital stock, it was not competent for the legislature to tax the stockholders on their shares—a conclusion not necessary to approve, as the question is not here involved.

On the rule of construction to prevent double taxation, many decisions are collected in Cook on Stock and Stockholders, § 568, note 1. The subject of taxation of corporations, and the stockholders therein, is full of subtle distinctions, not necessary to be encountered in this case; we shall therefore content ourselves with keeping near the subject of our inquiry.

Our laws do not now provide, and have never provided, any detailed and elaborate scheme for taxation of corporate property, such as may be found in some of the other states, notably New York, Pennsylvania and New Jersey, doubtless because they are few in number in our state, and of but small relative wealth. With the exception of those provisions which relate to taxation of banks and railroads, and those which relate to privilege taxes, §§ 3750 and 3758, code 1892, comprise our whole law on the subject. It is somewhat difficult to perceive the precise purpose of the plan of taxation thereby provided; it is certain that its details are not expressed, but must be found from inferences drawn from general principles. The original of § 3750 is found in the act of February 20, 1840, and that of § 3758 in the act of March 5, 1846. Hutchinson's Code, pp. 177, 197.

As originally enacted, our present § 3758 read as follows: "The president or cashier of any bank, the capital stock of which is taxable, shall, on or before the first day of May in each year, deliver to the assessor of the county in which said bank is liable to be taxed, a written statement of the capital stock actually paid in, or secured to be paid in, except such stock as is held by the state or some incorporated literary or charitable institution, which statement shall be verified by the affidavit of the president or cashier of such bank."

In the codification of our laws in April, 1857, the requirement was that the statement should be of the capital stock paid in, instead of that paid in or subscribed, and the exception was of such stock "as is held by the state, or otherwise not liable to be taxed." Code 1857, p. 77, art. 24.

In the codification of 1871, the section was extended so as to include banks and "other joint stock companies." Code 1871, § 1683.

In the code of 1880, the exception of stock "held by the state, or otherwise not liable to be taxed," was changed so as to read, "such as is not liable to be taxed," and the market value of the stock, instead of its par value, was fixed as the basis of taxation. It thus appears that the exemption of the statute could be claimed only when the *stock* of the company was by law exempted to the company, or the shares of stock to the stockholders.

Under the law as it stood prior to the code of 1880, the stock of the company was the subject of taxation, and whether its value had increased or diminished, by investment or loss, the basis remained unchanged. This was taxation of the stock, purely and simply as stock. But by the code of 1880 a marked change was wrought, for while the word stock continued to be used, other considerations, by which its value was determined, were brought into view. The accrued surplus or profit, the franchise of the corporation, and whatever other things which gave value to the stock, were added as factors in determining the basis of taxation. So,

also, if the value of the stock had been, from any cause, diminished, that fact was to be considered, and due allowance made in its valuation. ,

In *Farrington* v. *Tennessee*, 95 U. S., 679, illustrations are given of the different phases which taxation of corporations may assume. Thus, there may be taxation (1) of its franchise; (2) of its accumulated earnings; (3) profits and dividends; (4) real estate; (5) deposits in banks; (6) capital employed; (7) on circulation.

Though, as we have said, the details of the plan of taxing corporations are left somewhat uncertain by our laws, it is obvious that the purpose is to tax under the comprehensive designation of corporate stock, at its market value, all species of property owned by the corporation, whatever enters as a factor in determining its value. It is also evident that taxation of its real and personal property in specie is not taxation of all the various elements of value, for this would exclude in all cases the value of the franchise, and also its investments in securities of a non-taxable nature. On the facts stated in the petition, the stock of the Mississippi Mills is property which has escaped taxation, within the meaning of our law, and it was the duty of the assessor, upon discovery of that fact, to assess it as such, and make proper return to the board of supervisors.

That we may not be misunderstood, we will note here that we speak with reference to a subject of taxation omitted by the assessor, and not considered by the board of supervisors. If the things taxed—the real and personal property of the company—comprised its capital stock, the mere change of nomenclature would not carry liability to an additional tax nor open the door to a reconsideration of the value of the property. Values, when fixed by the conjoint action of the citizen and the constituted authorities, cannot again be made the subject of controversy between the state and the citizen, but are definitely and conclusively fixed by the final action upon the assessment-rolls according to law.

It is the fault not only of the assessor, but of the mills, that return was not made of its capital stock for taxation as required by law ; and that its real and personal property was assessed and taxed is not a sufficient reply to the demand of the state that its stock shall now be assessed, as it should have been through all the years in which it has escaped.

It is proper and important to consider what rule should apply in the assessment of the stock for taxation.

1. It is to be noted that assessments of the character now under consideration are made *nunc pro tunc*. The property and the burden are to be considered just as they would have been if the assessment had been made when it should have been. The valuation of the property should be according to its value at the time when it ought to have been assessed, and the tax imposed is that which then should have been collected.

2. The assessment heretofore made of the real and personal property of the company should be deducted from the value of the stock, for, as we have said, they constitute factors in determining its value; and, having been once assessed, taxation of it again, under the name of the stock, would be double taxation. For, though the legislature might have levied both an *ad valorem* tax and a privilege tax upon the company, that levied is an *ad valorem* tax, and it is not to be presumed that the legislative purpose was to tax the same property twice.

In many of the states where corporate stock is assessed, it is provided that there shall be subtracted from its real value the assessed value of its real estate. Under such statutes all danger of a double assessment is obviated. While our law contains no such provision, we can perceive no more satisfactory or certain process by which the legislative purpose can be carried into effect, nor is there any reason why the assessor and supervisors may not resort to it in determining the taxable value of the stock.

Another objection made by the appellee is that, under the acts of 1872 and 1873, above noted, all the property of the

company was exempt from taxation for a period of ten years, and under that of 1882, all additions exceeding in value $50,000 was exempted for another period of ten years. But, so far as the record discloses, the exemption claimed under the act of 1872 has long since expired, and that claimed under the act of 1882 has never attached. If, upon a discovery of all the facts, it shall appear to the officers that the right to the exemption exists, it would be proper to give effect to it in the valuation of the stock of the company. It is true that, by the acts referred to, it is the property of the company which is exempted, while, under the revenue act, it is what is called the stock that is taxed. Under some circumstances, these terms may be construed as referring to distinct things, and an exemption of the property, as such, from taxation would not preclude the legislature from imposing a privilege tax upon the company, whether graded by the value of its stock, or of its property, or by any other standard. But, as we have said, the words of our statute, capital stock at its market value, includes not only the franchise of the corporation, but also its property of all description, and the taxation intended is taxation of property and not of a privilege. Our statute, as we have shown, has existed for many years, and is, of course, of general application, and when specific exemptions have been granted, either by special acts or by general provisions, intended to displace those of the revenue act, effect should be given to them. It cannot be doubted that general laws, subjecting all property of corporations or individuals to taxation, should be controlled by other statutes, either general or special, which evidence a clear purpose that certain property, under certain conditions, should not be taxed, and upon the same principle the statute under consideration should be so construed.

Counsel for appellee finally contend that the Mississippi Mills is not a "bank or other joint-stock company," and is therefore not within the terms of the law. This construction is too rigid, and would practically nullify the statute.

All corporations have stock, but some associations not corporations have also. The term "other stock companies" was used to include all associations having stock, and not to exclude those having stock which are also incorporated.

We observe that much we have said as to this proceeding is advisory merely, for by mandamus the judicial discretion of the officer cannot be controlled. He can only be compelled to act. If, in acting, mistakes of judgment occur, they must be corrected in another proceeding.

It remains only to be said that Oliver, in his life-time, and his estate now, are not taxable with the value of his shares in the stock of the company. Stock in domestic corporations is taxable under the provisions of law we have been considering, and it is not contemplated that the share-holder shall be again taxed with so much of it as he owns individually. There is no express declaration of law that he shall be, and the presumption is that, having been taxed once to the company, it shall not be taxed also to the share-holder.

*The judgment is reversed.*