ROBERTSON, STATE REVENUE AGENT, v. UNITED STATES NURSERY CO.

[83 South. 307, In Banc. No. 20775.]

1. TAXATION. *Bank taxes on capital stock invested in property taxed valid.*

   The mere fact that all the capital stock of a corporation operating a plantation and nursery has been invested in real and personal property which has been assessed and subjected to taxation constitutes no bar to a back assessment upon any portion of its capital stock, where the corporation has neither been assessed upon capital stock *eo nomine*, nor paid taxes upon the value of its capital stock as such.

2. TAXES. *Deduction of assessed value in back. Assessing capital stock.*

   In a proceeding to back assess the capital stock of a corporation the total assessed value of its real and personal property should be deducted from the value of its stock.

3. TAXATION. *Presumption as to regularity of assessment.*

   Both the state revenue agent and the tax assessor are public officers and the general legal presumption that they have regularly and accurately performed their duties must ordinarily be indulged.

4. TAXATION. *Presumption of regularity on disapproval by supervisors.*

   This presumption is not affected because the board of supervisors have disapproved an assessment made by them.

5. TAXATION. *Insufficiency of evidence to overcome presumption of regularity of assessment.*

   In a proceeding to back assess the capital stock of a corporation wherein it appeared that such capital stock had been invested in real and personal property which had already been subjected to taxation, since under Code 1906, section 4267 (Hemingway's Code, section 6901), it was the duty of the corporate officer to furnish information to the assessor so that the value of the stock might be ascertained with some certainty, the court held that the evidence in this case was not sufficient to overcome the *prima-facie* showing by the taxing officers that they had performed their duty in imposing the assessment under Code 1906, section 4740 (Hemingway's Code, section 7058).

6. SAME.
   The court held the evidence in this case sufficient to show the market value of the stock so as to allow a deduction therefrom of the total assessed value of the real and personal property.

7. TAXATION. *.Disallowance of assessment by supervisors as res judicata.*
   Where the board of supervisors had disallowed a back assessment of the capital stock of a corporation while sitting in one of the two districts of the county in violation of Laws 1892, chapter 93, section 12, this did not support a plea of *res adjudicata* in a subsequent back assessment proceeding directed against the same stock at a sitting in the proper district of the county.

APPEAL from the circuit court of Coahoma county. HON. W. A. ALCORN, JR., Judge.

Proceeding by Stokes V. Robertson, State revenue agent, against the United States Nursery Company to bask assess defendant on its capital stock. The board of survivors disallowed the assessment, and on appeal to the circuit court, a peremptory instruction was granted the corporation and the state revenue agent appeals.

The facts are fully stated in the opinion of the court.

*Wells, Robinson & Jones,* for appellant.

This court, in the case of *Peoples' Warehouse* v. *Yazoo City,* 97 Miss. 500, laid down the rule that the market value of the capital stock, less the value of the real and personal property, was the value of the franchise. So, in the case at bar, our contention is that the market value of the capital stock of appellee is fifty-eight thousand, three hundred and twenty dollars, and after deducting the assessed value of all real and personal property, an untaxed value of capital stock, in excess of forty-six thousand remains and since the court, in the *Warehouse Case, supra,* this was the value of the franchise element of the capital stock, we adopt this term.

Appellee insists upon section 4267. No vestige of any showing is made that the appellee ever attempted to follow this section, but on the contrary, never, at any time, was any assessment of capital stock, as such, on the assessment roll. Appellant cannot claim double taxation of the capital stock by reason of this additional assessment, since the capital stock was never assessed for the first time on the roll. But, says appellee, the property which was represented by capital stock assessment, was assessed as land and personal property and therefore, you must not hold me literally to section 4267 which requires the assessment to be made against the capital stock.

In the case of *Adams* v. *Bullock, supra,* cited by appellee, the appellee in that case carried his capital stock investment on the personal roll in the column called "Capital invested in merchandising and manufacturing." The court said there: "The real question presented for decision is: where property is listed for taxation under the description of 'capital invested in merchandise and manufacturing' can it be said that the value of this franchise is included?"

The court held that the franchise value was not so included; and it follows, therefore, that the assessment of lands and personal property did not, and cannot, in the nature of this case, include the value of the franchise of the United States Nursery Company.

In the *Simmons Case,* 70 Miss., on page 501 the court said: "It is also evident that taxation of its real and personal property in specie is not taxation of all the various elements of value, for this would exclude in all cases the value of the franchise, etc."

It must follow, therefore, that the appellee is forced to the situation where the argument can no longer be made that the assessment of its real and personal property in specie was a taxation of all its taxable values.

But, says appellee, again admitting that what you say is true, that a franchise is taxable, and that the assessment of all of our property as lands and personal property does not operate as an assessment of capital stock, as required by section 4276, still, you have not separately assessed our franchise, and you must assess the franchise *eo nomine* under this section, and the *Bullock case, supra.*

Section 4267 does not require the various elements comprising the cash market value of the capital stock to be assessed *eo nomine.* The word "franchise" nowhere appears in this section. On the contrary, the statute says: "The capital stock of such company or corporation shall be assessed to it for taxation to the extent of the full amount of the value thereof, etc. . ."

This section does require, and nothing more, that the capital stock shall be assessed at its cash market value, less the assessed value of the real estate. So, in the case at bar, the proper assessment would have been for the year 1910, capital stock, forty-six thousand, six hundred and ten dollars."

The value of capital stock is an aggregate of the various elements of value, among the number being franchise value, and so in assessing the capital stock at its cash market value all of the various elements of taxable value must be included in the assessment of capital stock, and this is exactly what the court meant in the case of *Adams* v. *Bullock, supra.*

This phase of the case, in its final analysis, comes down to the proposition already adverted to, viz: Must the franchise be assessed *eo nomine,* or does the assessment of capital stock, at its cash market value, include every possible value to be assessed?

This matter is not difficult to determine; we submit we have already attempted to show that the very terms of section 4267 contemplate the assessment of capital stock as a whole, and not in its various and varying

constituent elements. The divers and sundry elements of value would vary with the different kinds of corporations to be assessed. No assessment roll could be prescribed by which a column could be set apart for the different elements of value of the many kinds of personal property that corporations might own. If the franchise must be assessed by name so would every other item of personal property going to make up the aggregate market value of the capital stock.

We are not limited, however, to our own opinion as to the right to back assess the franchise under the heading of "Additional Assessment of Capital Stock." In the case of *Pithiam Land Company* v. *Johnston, Revenue Agent,* decided on April 2, 1917, without a written opinion, and reported in 74 So. page 694, the original record being No. 19018, is found an authority on all-fours with the one now under consideration by the court. The original record in that case shows that the back assessment was made on the assessment roll under heading of "additional assessments of capital stock."

We assert without fear of contradiction, that the Pithian case, which was affirmed by this court, cannot be distinguished from the case at bar. It is argued on page 6 of appellee's brief that the *prima-facie* correctness of the assessment roll does not arise until the roll has been approved by the board of supervisors. No authority is cited, nor do we think any such authority can be found. The assessor's entry is not a mere clerical entry, as stated by counsel for appellee. In the *Tonella case,* 70, Miss., the court said the assessor was a judge of value. The act of the assessor is an official act, and it is entitled to *prima-facie* presumption of correctness. 37 Cyc., 1069-1070-1071.

In the case at bar, the revenue agent took an appeal from the decision of the board of supervisors, and the trial was had *de novo,* just as though no judgment had been entered by the board of supervisors. The assess-

ment roll, therefore must have been *prima-facie* correct, just as it came from the hands of the assessor.

In conclusion, we submit that under no circumstances should the court have granted a peremptory instruction to the defendant, but this case should be reversed and judgment entered here for the plaintiff, as appellant's request for peremptory instruction should have been granted.

*Scott & Crisler,* for appellees.

It is expressly admitted that this entire capital stock of appellee was, for all the years 1910 to 1915, inclusive, invested in real and personal property, located and situated in the first judicial district of Coahoma county, Mississippi, and all this real and personal property was assessed for taxation on the assessment rolls of Coahoma county for the years 1910 to 1915, inclusive, and that all taxes assessed against said property were duly paid.

Let it be specially borne in mind that appellee's entire capital stock was invested in the said property upon which all taxes were paid. Had the assessed value of this property exceeded the value of appellee's capital stock, appellee would surely have been liable for the full property tax just the same. If perchance, however, appellee in its business transactions had been so unfortunate as to put all its capital into property, the value of which is far below the amount invested, can appellee be chargeable with further tax than on the assessed value of such property? The manifest position of appellee, then, is that since this property represents it entire capital, any additional assessment on the capital stock would amount to double taxation.

We confidently maintain that when it is brought to the attention of the board that all of the capital is so invested it is the duty of the board to inquire into and

see if such property is correctly assessed, and if it so find, the state is concluded thereby. This the board was bound to have done in approving the assessment rolls as provided by law. *State* v. *Simmons,* 70 Miss. 485.

This decision is entitled to the greatest consideration. Although at the time it was handed down, section 4267, Code 1906, sec, 6901, Hemingway's Code, had not been enacted, Judge Cooper in speaking for the court, had in mind, and outlined in this opinion, the method of taxation described in this section, and his announcement was later embodied in this statute. The decision on page 501 says: "That we may not be misunderstood, we will note here that we speak with reference to a subject of taxation omitted by the assessor, and not considered by the Board of supervisors. If the thing taxed, the real and personal property of the company—comprised its capital stock, the mere change of nomenclature would not carry liability to an additional tax nor open the door to a reconsideration of the value of the property. Values, when fixed by the conjoint action of the citizen and the constituted authorities, cannot again be made the subject of controversy between the state, and the citizen, but are definitely and conclusively fixed by the final action upon the assessment rolls according to law."

As already noted. this decision was the forerunner of section 4267, Code 1906, section 6901, Hemingway's Code, which provides the method of taxing the capital stock of a corporation. This proceeding was instituted at the instance of the revenue agent to assess for back taxes the capital stock of the appellee. Nowhere in the entire proceedings is there the slightest intimation that there is any intention to tax appellee's franchise. Nevertheless, appellant's entire brief is addressed to the proposition of taxing corporate franchises, Why is appellant attempting to swap horses in midstream? The franchise and the capital stock are

entirely separate, having distinct taxable values, and cannot be confused or intercharged, *Adams* v. *Bullock,* 94 Miss. 27.

In view of this decision, which is the repeated announcement of this court, and particularly in face of section 4267, Code 1906, section 6901 Hemingway's Code, we fail utterly to comprehend the purport of, the lengthy discussion in brief of counsel for the appellant regarding taxation of corporate franchises, unless it be to lead the mind of the court away from the real purpose of this proceeding, namely, that of taxing further the capital stock of appellee. We are disposed to believe that appellant, seeing the storm approach, has trimmed his sails for new direction.

Let us review briefly the cases cited in the brief of counsel for appellant. The case of *Peoples Warehouse Company* v. *Yazoo City,* 97 Miss. 500, holds nothing adverse to the contention of the appellees. However, it is plainly evident that that case is distinguished from the case at bar in that the record does not show that the entire capital was invested in the property and because the market value of the capital stock and the value of the property are admitted. In the case at bar, the record shows that appellee's entire capital is invested in the property upon which all taxes were duly paid, and the record contains no evidence of market value of appellee's capital stock. The question before the court in the Warehouse Co. case was whether the corporation could be taxed for any amount over and above the property which it owned, whether in the form or franchise or corporate stock. If a corporation could be so taxed, it was no concern to the court or the parties whether such tax should be imposed upon the franchise or upon the capital stock.

The case of *Panola County* v. *Carrier,* 89 Miss. 277, merely cites with approval the decision of the court in the case of *State* v. *Simmons,* 70 Miss. 485, and

announces that a corporation in giving its corporate stock for assessment of taxes is not authorized to deduct therefrom its indebtedness.

The case of *Adams* v. *Bullock, supra,* distinguishes between the taxable value of the corporate franchise and the taxable value of the corporate stock, defining them as separate and distinct. The case of *State* v. *Simmons, supra,* announces the rule for taxation of corporate stock, which later was enacted into law and became section. 4267, Code 1906, section 6901, Hemingway's Code.

There is nothing in these cases to justify a suspicion much less a conclusion, that appellee's franchise can be taxed in this proceeding which was instituted to further tax the capital stock, when the franchise and capital stock are entirely separate and distinct, and each has taxable value of its own. Especially is this true, when no attempt whatever has been made to assess appellee's franchise. Hence, we do not feel called upon to say whether the franchise of appellee is or is not liable for back taxes, but we say unhesitatingly that under the facts as shown, appellee is not liable for back taxes on its capital stock. And in conclusion of this point we again quote one of the sentences in the paragraph quoted from *State* v. *Simmons, supra;* ''If the things taxed, the real and personal property of the company, comprised its capital stock, the mere change of nomenclature would not carry liability to an addition tax, nor open the door to a reconsideration of the value of the property.'

Assessment roll conclusive evidence of value. Section 4256, Code 1906, section 6887, Hemingway's Code, makes the assessment roll *prima-facie* evidence of value. We agree heartily with appellant that it is elementary that this evidence becomes conclusive in the absence of counter proof to overthrow the presumption thus made by the statute, but the question natu-

rally arises, at what stage does this presumption of correctness attach. to the assessment roll. Before answering, let us review briefly the steps necessary to complete the assessment roll. The law provides: (1) It shall be the duty of the assessor to make the assessment; (2) That notice shall be given of the filing of the roll with the board; (3) A time for hearing objections; (4) correction of errors by the board; (5) approval of the roll by the board. By what process of reasoning can it be said that the roll is *prima-facie* correct before · approval when the law acknowledges the existence of errors by providing that the board shall correct them before approving the roll. In contemplation of the law, it does not become an assessment roll in any legal sense until approved by the board.

After such approval, if it should later be found that an error existed, due correction could be made under section 4312, Code 1906, section 6946, Hemingway's Code.

The mere statement in appellee's answer that its capital stock was worth "approximately ninety cents on the dollar and has not exceeded that amount in value during any of the years from 1910 to 1916, inclusive," is no admission of value and is utterly void of probative force. Certainly, if the value was approximate and did not exceed 90 cents for any of those years, the inevitable conclusion is that it must have been less and necessarily varied from year to year. What amount then, less than nintey cents, will be assessed as the value of the stock for 1910? What amount for 1911? What amount for each and every year from 1910 to 1915, inclusive? If we assume some arbitrary value less than ninety cents as the value during all these years, what amount shall it be? Certainly these considerations compel the conclusion that this statement is too indefinite to constitute an

admission of value and amounts to no proof whatever. *Donald* v. *Petty,* 4 N. Y. 673.

This matter *res adjudicata.* Appellee pleads as *res adjudicata* an order of the board of supervisors passed at a meeting held in the second district of Coahoma county. Appellant objected to the introduction of this order in the court below on the ground that the board did not have jurisdiction over a matter pending in the first district at a meeting held in the second district.

When this order was offered as evidence, appellant objected and the court reserved its ruling. Appellant did not demand or even request a ruling from the court before the evidence was all in and both sides had rested, or at any other time. The case then proceeded to judgment as if no objection had been made. This action on the part of appellant constituted a waiver of the objection. Under these circumstances the result was inevitable that this *bona-fide* order of a recognized tribunal should receive full faith and credit, resulting in a judgment for appellee, even should appellee not have been entitled to it under any other view of the case. And we now submit that it is now too late to predicate error upon the admission of this order, and since this order constitutes a complete defense to appellant's claim, and no error, no matter how palpable, can avail appellant anything, the granting of a peremptory instruction requested by appellee was inevitable. But in case the court should decide to consider the question of the order we would call its attention to the following observations. Appellant cites in support of his objection, Laws 1892, page 362, manifestly referring to section 12 thereof. We maintain that section 12 is not applicable to the facts in this case in view of section 11 of said Act. Section 11 reads as follows: "The board of supervisors of said county shall hold their meetings or sessions at the times required and pro-

vided by law, alternately, at Friars Point and Clarksdale, respectively, the seats of justice of the aforesaid first and second district holding their first meeting or session after the passage of this act at Friars Point, and their jurisdiction shall extend over the entire county just as if it were not divided into separate districts. The clerk of the chancery court of said county shall be the clerk of said board at each of said districts." This power is restricted only by section 12 which has reference to the approval of assessment rolls.

We therefore maintain, first, that appellant is concluded by the admission of the order of 1916; second, that should the court not so hold, and give consideration of this additional objection of appellant to the order, which would appear contrary to all recognized principles of procedure, the said objection is entirely void of merit; and third, that the board was vested with full jurisdiction under section 11, Laws of 1892, and appellee is now fortified behind the unscalable walls of *res adjudicata*.

STEVENS, J., delivered the opinion of the court.

This is a proceeding by the state revenue agent to back-assess the United States Nursery Company, a corporation, upon its capital stock for the years 1910 to 1915, inclusive. At the instance of the state revenue agent the tax collector of Coahoma county gave notice to appellee of an additional and back tax assessment on a valuation of twenty-five thousand dollars capital stock, surplus, and undivided profits for each of the years mentioned, The notice was duly served and upon objections by appellee and consideration thereof by the board of supervisors the assessment was disallowed. From the order of the board disallowing the assessment the revenue agent appealed to the

circuit court. The issue was presented to the court and jury, a peremptory instruction was granted appellee, and from the judgment of the circuit court the state revenue agent prosecutes this appeal.

One defense presented by appellee is submitted in the following paragraph of its sworn answer:

"Your respondent's authorized capital stock is now and has always been under its charter of incorporation seventy-five thousand dollars, but that of said capital last aforesaid only sixty-four thousand eight hundred dollars has been issued, sold, and paid for; that all of its said paid-in capital stock, last aforesaid, is now and has been, during all the years last aforesaid, invested in real estate and personal property, situated in Coahoma county, state of Mississippi, and that the said capital stock so issued and paid in, as above stated, has now a cash market value of something less than par, to wit, approximately ninety cents on the dollar, and has not exceeded that amount in value during any of the years from 1910 to 1916, inclusive; that your respondent has during all the years last aforesaid paid all taxes levied and assessed against its said real and personal property, and that its real and personal property has been during all the years last aforesaid and is now assessed for taxation, and taxes paid there on, as other like property is assessed and taxed in Coahoma county, Miss."

Appellee further pleaded that J. C. Johnston, former state revenue agent, had heretofore attempted to back-assess appellee upon its capital stock for the same years involved in this proceeding, and that at a regular meeting of the board of supervisors of Coahoma county held at Clarksdale in April, 1916, an order was passed by the board disapproving the back assessment, and that no appeal had been prosecuted from this prior order and that the same is now *res adjudicata.*

The appellee is a corporation domiciled in the first district of Coahoma county engaged in the business of operating a plantation and nursery.

In the circuit court the revenue agent introduced Mr. Crowell, the manager of appellee company, who testified as to the capital stock paid in, the property owned by the company, and something of the business which the company was doing. This was the only witness introduced. Appellee introduced the order of the board of supervisors of Coahoma county entered at Clarksdale in April, 1916 in the second judical district of said county, disapproving the assessment made at the instance of J. C. Johnston, former state revenue agent. This constituted all of the evidence submitted to the jury. Both sides asked for a peremptory instruction and the trial judge charged the jury to find for the defendant. The correctness of this ruling is challenged by the present appeal. Appellee relies for affirmance on three grounds: First, that all of the capital stock of the United States Nursery Company was invested in real and personal property; that this tangible real and personal property had been duly assessed for taxes on the assessment rolls of Coahoma county and taxes duly paid thereon, leaving no part of the capital stock untaxed; second, that inasmuch as all the capital stock had been invested in real and personal property which had been duly assessed and taxes paid thereon, the value of this assessment of real and personal property must be taken and considered as the full value of the capital stock, there being no proof in the record as to actual market value; third, that the matter at issue has been heretofore adjudged by the board of supervisors at the instance of the former revenue agent.

The testimony of Mr. Crowell tends to prove that the corporation of which he is the active general manager was organized in December, 1904; that it is a land-holding and farming corporation domiciled at Rose

Acre,   in the first district of Coahoma county; that
no return has ever been made to the assessor, and no
taxes paid, on the capital stock of the company, but
that the real and personal property of the company
had been assessed upon the rolls like the property of
individuals; that the company owned one thousand,
and twenty-four and a fraction acres of land, "above
seven hundred acres" of which was in cultivation dur-
ing each of the years in question, the rest being wood-
land ; that about one hundred and twenty-five acres
was planted in nursery stock; that the personal property
consisted of mules and farming implements; and that
the land which was not planted in nursery stock was
utilized in general farming and in producing cotton and
corn.   Witness   further   testified   that   the   authorized
capital is seventy-five thousand, dollars, of which sixty-
four thousand, eight hundred, dollars was paid in, repre-
sented by six hundred, and forty-eight, shares of the
par value of one hundred dollars each; that there was
no bonded indebtedness, but that the company owed
twenty-five thousand, dollars, represented by notes exe-
cuted for the purpose of paying off the mortage
indebtedness   when   the   plantation   was   purchased
and in making the crops; that the stock was carried
on the books at ninety cents on the dollar ever since
the organization, but that no dividends had been paid
and that the stock was carried at ninety cents just as
"a matter or form;" that the company had been un-
fortunate in its nursery stock, and had had labor and
weather conditions to contend with, and on this account
the company had not paid dividends.

The following questions with the answers thereto are
quite pertinent to the present inquiry:

"Q. What, if any, money did you make during the
years 1910 to 1915? A. Well, possibly a little, just
about holding our own. Almost an even break each
year as I recall it. Q. As to the cash market value

during the years 1910 to 1915, did it have any cash market value? A. I should not think so. None that I know of. Q. Did it have any cash salable value at that time? A. Why none that I know of."

Witness was further asked if the business was in better financial condition in 1915 than it was in 1910, and in response thereto said that it was worth possibly one thousand dollars to two thousand dollars more.

The assessment rolls were introduced and witness also testified as to the assessed value of both real and personal property for each of the years for which back assessment is sought. The combined assessed value of both real and personal property varied somewhat each year, ranging from nine thousand seven hundred and ten for the year 1910 to twelve thousand one hundred and seventy-four dollars for the year 1915.

There is no merit in the contention that merely because all of the capital stock of appellee corporation had been invested in real and personal property, and that its real and personal property had been assessed and subjected to taxation, the corporation cannot now be back-taxed upon any portion of its capital stock. The record shows that the corporation has neither been assessed upon capital stock *eo nomine,* nor paid taxes upon the value of its capital stock as such. There has been no return for assessment nor any assessment whatever of capital stock. The argument of learned counsel on this, the first point relied upon for affirmance, was clearly answered by Judge Anderson, speaking for this court in *People's Warehouse Co. v. Yazoo City,* 97 Miss., 500 52 So. 481, and especially by the observations of the supreme court of Massachusetts in *Commonwealth* v. *Cary Improvement Co.,* 98 Mass. 19, and likewise by the observations of the supreme court of the United States in *Adams Express Co.* v. *Ohio,* 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965, quoted with approv al in the *Warehouse Co Case.*

The plan of assessment prescribed by section 4267, Code or 1906 (section 6901, Hemingway's Code), has not been followed or complied with by appellee.

As said by our court in *State* v. *Simmons,* 70 Miss. 485, at page 503, 12 So. 477, at page 480, of the opinion: "The words of our statute, capital stock at its market value, include not only the franchise of the corporation, but also its property of all description."

But, as further stated, in a proceeding of this kind to back-assess the capital stock for taxation: "The assessment heretofore made of the real and personal property of the company should be deducted from the value of the stock, for, as we have said, they constitute factors in determining its value; and, having been once assessed, taxation of it again, under the name of the stock, would be double taxation."

It is quite true, therefore, that the total assessed value of the real and personal property should be deducted from the value of the stock in the present inquiry. This brings us to the second point relied upon by the appellee for an affirmance, to wit, that the actual market value of the stock was not shown, and therefore the state revenue agent as the plaintiff in the proceeding could recover nothing.

Much is said in the briefs about the sworn admission of appellee in its answer that the paid-in capital stock "has now a cash market value of something less than par, to wit, approximately ninety cents on the dollar, and has not exceeded that amount in any of the years during 1910 to 1916, inclusive;" appellant contending that this is an admission that the capital stock is worth at least ninety cents on the dollar, while appellee contends that "approximately ninety cents" does not necessarily mean the full amount of ninety cents, and still leaves no fixed basis upon which a verdict could be returned. Appellee further contends that it ought not to be bound by this admission in the

answer for the further reason that the manager testified that the stock was carried on the books at ninety cents as a matter of convenience and form, and that the statement in the pleadings should now yield to the proof. Appellee further contends that the proof failed to fix any valuation upon the capital stock, and on that account the defendant was entitled to the peremptory instruction which was asked for and given. The propriety of this ruling by the trial judge rests, we think, upon the proper consideration of the burden of proof in this case.

Upon whom was cast the duty of showing and fixing the value of the capital stock in this proceeding? The record affirmatively shows that acting upon the request of the state revenue agent the official tax assessor of Coahoma county back-assessed appellee on its capital stock at a valuation of seventy-five thousand dollars for each of the years 1910 to 1915, inclusive. The action here may be said to be the joint action of the state revenue agent and the official tax assessor. As stated by Chief Justice Cooper in *State* v. *Kuhn,* 72 Miss. 276, 16 So. 598:

"In the execution of the legislative scheme the revenue agent is the directing, impelling agency provided for to put in action the officers and machinery contemplated by the Constitution. He is the state's agent to compel action by other officers, in order that the constitutional scheme by which all property was intended to bear its equal portion of taxation shall be effectuated. To accomplish this purpose, it is as necessary that the machinery once set in motion shall be kept going until the end is reached as it is that motion shall be inaugurated."

Both the state revenue agent and the tax assessor are public officers, and the general legal presumption that they have regularly and accurately performed

their duties must ordinarily be indulged.  As stated by Judge Cooley:

"The general presumption that public officers have regularly performed their duties applies to official acts in tax matters."  1 Cooley on Taxation (3 Ed.), p. 447.

It is said in Amer. & Eng. Enc. Law (2 Ed.), p. 697:

"In the absence of evidence to the contrary it will be presumed that the assessing officers performed their official duty, and authenticated the assessment in the manner and form directed by the statute."

In 12 Ency. of Evidence, p. 370, it is said: "The proceedings of public officers in the levy, assessment, and collection of taxes are presumed to be regular and legal."

And on page 296 of the same volume: "Where a tax assessor in the line of his official duty makes an assessment of property for escaped taxes, the presumption is in favor of the assessment list and the return thereof."

Mr. Judson observes: "The burden of proof, which devolves upon the actor in all litigation, is emphasized in tax litigation, that is, in litigation involving the legality of taxation in that the litigant must overcome the presumption that assumes the validity of the exercise of legislative power, and the further presumption, when the acts of taxing officers are complained of, that such officers do not violate their sworn duty."  Judson on Taxation (2 Ed.), par. 645.

It is true that this statement of Mr. Judson is primarily directed to those cases in which the litigant sues to recover back an alleged illegal tax, but the point is emphasized that the presumption is in favor of the acts of taxing officers.

In the case of *New Orleans Canal & Banking Co.* v. *New Orleans*, 99 U. S. 97, 25 L. Ed. 409, the Supreme Court of the United States observed: "In this suit the burden of proof is on the bank to show that it has been unlawfully taxed.  The decision of the assessor

must stand, unless it can be affirmatively controverted.''

In *People ex rel.* v. *Keener,* 194 Ill. 16, 61 N. E. 1069, it was stated: ''That proof made a complete *prima-facie* case. The collector's return of the delinquent list, with statutory notice and proof of publication, *prima-facie* entitles the collector to judgment for the tax returned as delinquent. The presumption is that the assessor and other officers charged with levy and collection of taxes have done their duty, and have not made an illegal assessment or returned an illegal tax delinquent. We have repeatedly held that the burden of proof showing such matters as would avoid the tax or establish its illegality is upon the person objecting thereto.' *Consolidated Coal Co.* v. *Baker,* 135 Ill. 545, 26 N. E. 651, 12 L. R. A. 247; *People ex rel.* v. *Chicago & Alton Railroad Co.,* 140 Ill. 210, 29 N. E. 730; *Chicago & Northwestern Railroad Co.* v. *People,* 171 Ill. 249, 49 N. E. 542. 'It is the settled doctrine of this court that any one objecting to the enforcement of a tax assumes the burden of showing its invalidity. The presumption is that the tax is just—that all officers who have had any official connection with it have properly discharged their duties.' *Peoria, Decatur & Evansville Railway Co.* v. *People ex rel.,* 116 Ill. 401, 6 N. E. 497.''

This quotation was expressly approved in the later case of *People* v. *Hulin,* 237 Ill. 122, 86 N. E. 666.

The supreme court of Florida in the very recent case of *Camp Phosphate Co.* v. *Allen,* 81 So. 503, employs this language: ''The good faith of such officers and the validity of their actions are presumed. When assailed, the burden of proof is upon the complaining party'' (citing authorities).

The fact that the board of supervisors disapproved the assessment does not prevent the application of the rule under discussion. As said by Judge Cooper in *State* v. *Kuhn, supra*: ''It is as necessary that the

machinery once set in motion shall be kept going until the end is reached as it is that motion shall be inaugurated," and to the revenue agent "the right of appeal was given" by statute.

In this case the revenue agent appealed from the order and in the circuit court the trial was *de novo.* It was further stated in the *Simmons Case, supra*: "It is to be noted that assessments of the character now under consideration are made *nunc pro tunc.*"

The rule of evidence was expressly applied in a back-tax proceeding in *State* v. *Kidd,* 125 Ala. 413, 28 So. 481, in which the court said:

"Tax assessments made in the line of official duty are entitled to the usual presumption of correctness which attends the acts of public officers. *Perry Co.* v. *Selma, M. & M. Co.,* 65 Ala. 391; 25 Am. & Eng. Enc. Law, 236; 2 Desty, Tax'n, pp. 615, 616. The duty of assessing for escaped taxes, and of making a list and return thereof, is by the statute imperatively enjoined upon the assessor, and such list and return are of equal dignity as evidence with lists made for the current year. The evidence introduced upon the trial tended to show a valid assessment of property in both these cases, and in each of them the circuit court erred in giving the general affirmative charge for the defendant."

It will be observed that section 4740, Code of 1906 (section 7058, Hemingway's Code), in prescribing duties of the revenue agent in making additional assessments, requires ten days' notice in writing to the person or corporation whose property is assessed and expressly says: "All objections to such assessment shall be heard at the next meeting of the board," etc.

In the light of the authorities mentioned we are led to the conclusion that upon the trial of this case in the circuit court the duty devolved upon the corporation not only to disclose but to fix with some degree of

certainty the value of its stock, and that the lack of proof on this point militates against the corporation and it failed to overcome the *prima-facie* showing made by the taxing officers. If in fact the capital stock had no value in excess of the aggregate assessed value of its real and personal property, then certainly the officers and manager of the corporation could so testify and prove with some degree of certainty. This is a matter peculiarly within the knowledge of appellee. Indeed our statute (section 4267, Code of 1906 [section 6901, Hemingway's Code]) requires the president or other officer of the corporation to furnish, on demand, this information under oath in making original returns for assessment to the official tax assessor. On the point, therefore, as to want of proof of market value it was error to grant appellee a peremptory charge. It affirmatively appears that the capital stock had some value. Mr. Crowell admitted that the company had made a little money; that the stock was carried on the books at ninety cents on the dollar; that for two years preceding the trial of this case the company had paid an income tax to the federal government; that the company was in better financial condition in 1915 than it was in 1910. As stated by the supreme court of the United States in *Adams Express Co.* v. *Ohio, supra*: "It is a cardinal rule which should never be forgotten that whatever property is worth for the purposes of income and sale it is also worth for purposes of taxation."

There is no merit we think in the plea of *res adjudicata*. By an act of the legislature approved February 19, 1892, Coahoma county was divided into two districts; the courthouse of the First district being fixed at Friar's Point, and for the Second district at Clarksdale. Section 12 of the act, among other things, provides:

"It shall be the duty of the assessor of Coahoma county to file with the clerk of the chancery court of said county, two copies each of the land and personal assessment rolls of said county, filing one of each with said clerk at his office at Friar's Point and one of each in his office at Clarksdale, and said board of supervisors, in passing on said assessment rolls, shall at the proper meeting, held by them at Friar's Point, approve so much of the same as shall relate to and embrace property included and being in the first district of the county, and at the proper meeting held in Clarksdale, they shall act on and approve so much of said roll, as shall embrace and include the property within the Second district of said county, in all instances acting upon said rolls so far as the territory embraced in each of the respective districts is concerned in the same manner as though the action on or approval thereof related to the approval of assessment rolls of different counties, and the assessor and clerk shall provide suitable copies of said entire rolls as finally approved in all instances where required by law as though said rolls related to different counties; provided, that only one copy of each shall be required to be filed with the auditor of public accounts when the rolls shall have been approved for and so far as the same shall relate to each of said districts." Laws 1892, p. 368.

This very section of the act was construed by this court in *Investment Co.* v. *Suddoth,* 70 Miss., 416, 12 So. 246, and that case rules the point under discussion. In the course of the opinion in the Suddoth Case Judge Cooper said: "It is too clear for contention that the action of the board at its meeting at Friar's Point was a nullity in so far as it related to the assessment of the lands situated in the Second district."

So in the case at bar, the action of the board of supervisors taken at Clarksdale disapproving the as-

sessment of J. C. Johnston, state revenue agent, was in violation of the statute and a nullity.

On neither of the points relied upon by appellee can the peremptory instruction in this case be justified. The judgment of the learned circuit court will accordingly be reversed, and the case remanded for a new trial.

*Reversed and remanded.*