[No. 8033.  Department One.  September 30, 1909.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v.
PIERCE COUNTY *et al.*, *Respondents*.[1]

TAXATION—EXCESSIVE—ASSESSMENTS—EVIDENCE—APPEAL—REVIEW.
An assessment cannot be disturbed for mere overvaluation, in the
absence of fraud or capriciousness, and clear evidence to overcome
the liberal presumption that the assessor performed his duty in a
proper manner; and a finding sustaining an assessment will not be
disturbed upon conflicting evidence of values, in the absence of fraud.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered January 25, 1909, upon find-
ings in favor of the defendants, dismissing an action to re-
strain the collection of taxes, after a trial on the merits be-
fore the court without a jury.  Affirmed.

*Geo. T. Reid* and *J. W. Quick*, for appellant.

*J. L. McMurray* and *H. G. Rowland*, for respondents.

FULLERTON, J.—The appellant, Northern Pacific Railway
Company, brought this action against Pierce county and its
treasurer to restrain the collection of certain taxes levied by
the respondent county on lands designated upon the assess-
ment rolls as blocks 67 to 71 inclusive, less the right of way
of the Northern Pacific Railway Company.

In its complaint the appellant alleges, that it is the owner
of the blocks mentioned, and that the same are partly oc-
cupied by railway tracks of which it is also the owner; that
in the year 1907, as required by the laws of the state of
Washington, it returned to the assessor of Pierce county a
list of the main and side tracks owned by it in Pierce county,
in which was included the tracks on the blocks before men-
tioned, and that such tracks, together with the land occupied
by them, were duly listed by the assessor as part of the com-
pany's right of way, and a tax duly levied thereon, which tax

[1]Reported in 104 Pac. 178.

the company paid; that in placing a value for taxation on the portions of the blocks not embraced within the right of way, the assessor inadvertently, through mistake and oversight, omitted to deduct from the value of the within blocks the value of that portion occupied by tracks, but in making such assessment fixed the value on the portion not occupied by tracks, at a sum equal to the value intended to be placed upon the entire blocks; that by reason of the inadvertence, mistake and oversight of the assessor there had been in fact a double assessment of the company's property before described; that its property had been assessed for the sum of $781,400, whereas its actual value was but $156,273; that the valuation placed on the property by the assessor was grossly in excess of the actual value, and grossly in excess of the valuation placed by the assessor on like property similarly situated, and that the tax levied thereon constitutes an unfair, unequal, and grossly excessive tax; that the total tax charged against the property mentioned is the sum of $28,-208.54, whereas, the proper amount chargeable is the sum of $5,641.45, which total sum with interest and penalties the company had tendered to the assessor and stood at all times ready and willing to pay. It thereupon prayed that the county be required to accept the sum of $5,641.45, with interest and penalties, in lieu of all taxes against the property described, and cancel all additional charges, and that the property be declared free and clear of all liens on account of taxes.

The county and its treasurer answered the complaint, denying that the appellant's property had been doubly assessed or assessed in a sum grossly in excess of its value, or overassessed in any manner, and pleading affirmatively that the property had been valued for taxation at the sums named in the complaint, in the year 1906 for the biennial period provided by statute, and a tax levied thereon for the year 1906, which tax the appellant had paid; that no change was made in the valuation of the property for 1907, and the

valuation complained of as excessive in that year was the valuation accepted by the appellant for the preceding year. On the issues thus made a trial was had, which resulted in a judgment of dismissal of the appellant's action.

There was no direct evidence of inadvertence, mistake or oversight on the part of the assessor, nor was there any direct evidence tending to show that a double assessment had been made of a part of the property described. On the contrary, the assessor, when put upon the witness stand and interrogated concerning the method pursued in making the particular assessment, testified that he had no independent recollection of the matter at all, and the assessment roll, when produced, showed that the assessment did not include that part of the several blocks covered by the railway tracks and assessed as a part of the appellant's right of way.

The appellant, however, sought to prove its case by showing that the property was grossly overvalued as compared with its real value and the assessed value of like property of another owned in the same situation. To that end it showed that the property of the Puget Sound Flouring Mill Company, which owned 1.8 acres in the north part of block 71, was assessed at $32,400, or at the rate of $18,000 per acre, while its own part of the block, consisting of 2.24 acres, was assessed at $56,300, or at the rate of $25,133 per acre. It showed furthermore, that its holdings in these several blocks, outside of its right of way, had been assessed at amounts ranging from $25,133 per acre in block 71, to something over $39,000 dollars per acre in block 67, whereas its tax commissioner testified that a fair average value of the entire tract was $10,000 per acre. It appeared also that the assessor purported to assess the land at only sixty per cent of its actual value.

On the other hand, the county put in evidence testimony to show that the blocks were chiefly valuable because of their situation, covering as they do the principal water frontage of the city of Tacoma, and being desirable for docks, wharves,

and warehouse sites. It also put upon the stand four wit-
nesses who qualified themselves to testify as to the value of
the particular tracts. One, a Mr. Hellar, placed a valuation
on the property substantially in accord with that appearing
on the assessment rolls; another, a Mr. Miller, valued the
property at from $50,000 to $80,000 per acre; and the two
others, a Mr. Mettler and a Mr. Railsback, placed a valua-
tion thereon of from $75,000 to $100,000 per acre.

The circumstances under which the courts are authorized
to interfere with an assessment of property made by the as-
sessing officers has frequently been a subject for consideration
by this court. In *Templeton v. Pierce County*, 25 Wash.
377, 65 Pac. 553, the decisions rendered prior to that time
were summarized, and the principles governing the action of
the court were restated. It was there said that fraud, ca-
priciousness, or want of the exercise of an honest judgment
on the part of the assessing officers was ground for interfer-
ing with the action of the officers, if the assessment made was
grossly disproportionate to the value of the property as-
sessed, or unequal when compared with the assessments on
other property of like kind; but that mere overvaluation,
unless the excess was so gross as to impute fraud on the part
of the assessing officer, was not a ground for interference;
that the assessor in placing valuations upon property acts
in a *quasi* judicial capacity, and the law presumes that he
has performed his duty in a proper manner; that this pre-
sumption is liberal, and the evidence to overthrow it must
be clear. The same principles are enunciated in subsequent
cases. *Miller v. Pierce County*, 28 Wash. 110, 68 Pac. 358;
*Henderson v. Pierce County*, 37 Wash. 201, 79 Pac. 617;
*Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855.

Tested by these principles, there would seem to be no cause
for interference with the assessment complained of here.
There is no direct evidence of fraud, capriciousness, or want
of an exercise of an honest judgment on the part of the
assessor, and the presumption of fraud that might arise

from the fact that the railroad's property is assessed at higher valuation than the similar tract owned by the Puget Sound Flouring Mills Company is not conclusive of overvaluation, in the light of the evidence as to values given by the witnesses. This evidence would rather indicate that the property of the flouring mill company was underassessed, than that the railroad's property was overassessed. And since the question is one to be determined from the weight of the evidence, we feel that inasmuch as the trial judge, who had the witnesses before him and knew their standing as men of capacity and judgment, saw fit to allow the assessment to stand, we have no warrant to overturn it.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.