## In re ASSESSMENT OF KANSAS CITY SOUTHERN RY. CO.

No. 25038. May 8, 1934.

Rehearing Denied June 26, 1934.

496

Frank H. Moore, James B. McDonough, R. M. Rainey, Frank G. Anderson, and A. F. Smith, for appellant.

J. Berry King, Atty. Gen., F. M. Dudley, Asst. Atty. Gen., (C. W. King, Atty. for the Oklahoma Tax Commission), for appellee.

McNEILL, J. This case involves an appeal from the assessment made by the Oklahoma State Board of Equalization on September 2, 1933, fixing the value of the property of the Kansas City Southern Railway Company for purposes of ad valorem taxation for the fiscal year 1933-1934 in the sum of $3,644,522.

The railroad company, through itself and its subsidiary and affiliated companies, owns and operates a single track line or system of railroad extending from Kansas City, Mo., to Port Arthur, Tex., with a route of mileage of about 790 miles. It has 142.94 miles of main line track in Oklahoma, all in Adair, LeFlore, and Sequoyah counties, 15.3 miles of this main line mileage being in the branch line from Spiro, Okla., to Fort Smith, Ark.

The issues as discussed in the briefs filed herein are reduced to two propositions:

First. Has this court jurisdiction to pass upon this appeal, and if it has, should it exercise that jurisdiction?

Second: Has the State Board of Equalization, in fixing the value of the railway company's property for purposes of taxation, based their findings on facts which have no material bearing upon the taxable value of said property?

It appears to be the contention of the railroad company, appellant herein, that this court does not have jurisdiction of this appeal, because section 12661, O. S. 1931, as amended by section 8, chapter 115, Session Laws 1933, which authorizes appeals to this court from assessments made by the State Board of Equalization, is unconstitutional. Under this proposition, the railroad company asserts that the judicial department shall not exercise legislative or administrative powers, except as provided for in the Constitution, and that article 7 of the Constitution, which deals with the judicial department, seems to provide only for the exercise of judicial powers by that department. In this connection the railroad company contends that, in attempting to confer administrative powers upon this court, and to

confine it to the exercise of such administrative powers in passing upon appeals from the Board of Equalization, the Legislature has attempted to take away from the court its power to act judicially, which is the only capacity in which this court is authorized to act under the provisions of article 4, and section 2 of article 7, of the Oklahoma Constitution. For these reasons said section 12661, as amended, is null and void, and is no authority for such appeal. Said section 12661, as amended, provides as follows:

"Section 12661. A complaint in like manner may be filed before the State Board of Equalization by any aggrieved person, as to any acts of assessment, or change in the equalized value of the property of any individual taxpayer; or may be filed by the county attorney for the entire taxpaying public of the county, as to the equalization, which the board shall consider, by hearing pertinent evidence; and for this purpose, authority to compel, by subpoena, the attendance of necessary witnesses and the production of necessary books, records, and papers, is given. The complainant shall have the right to appeal from the findings of the board, and, for this purpose, the secretary of said board shall cause such evidence to be taken and preserved, and shall cause such complaint and evidence, with a full transcript of the orders of the board thereon, to be transcribed, and shall certify to the same. Such transcript shall be filed by such county attorney, or aggrieved person, in the Supreme Court, within ten days from the adjournment of said board, which shall complete the appeal allowed by law. Such transcript shall, in due course, be examined and reviewed by said court, and affirmed, modified, or annulled as justice may demand; provided, that in order to perfect such appeal, the appellant shall file notice thereof with the secretary of the State Board of Equalization, within ten days after the adjournment of said board. The appeal herein provided is defined to be an administrative rather than a judicial appeal, and the Supreme Court, in hearing and determining the issues, shall sit in the same capacity as if it were a reviewing board of equalization."

Article 4 of the Constitution is as follows:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

Sections 1 and 2 of article 7 of the Constitution are as follows:

Section 1. "The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

Section 2. "The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof, in the state."

The railroad company also urges under this first proposition that, even if this court has jurisdiction of this appeal under its judicial capacity, it ought not to exercise it without appellant's consent.

It is the contention of counsel for the Attorney General and the Oklahoma Tax Commission, attorneys for appellee, that article 4 of the Constitution must be read and considered in connection with the aforesaid sections 1 and 2 of article 7 of the Constitution, and that these sections of the Constitution are broad enough to confer certain administrative powers upon the Supreme Court. Counsel for appellee state that article 4 of the Constitution separates and distinguishes the powers of government into three separate and distinct departments, and provides for certain exceptions thereto, to wit: "Except as provided in this Constitution," and that section 2 of article 7 of the Constitution specifically provides that the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law in addition to the jurisdiction provided in section 1, and other parts of section 2 of said article 7. It is the theory of counsel for appellee that the Legislature could confer upon this court administrative powers which are not in the strict sense of the word legislative.

In reference to the proposition relative to the fixing of the value of railway property for the purpose of taxation in 1933, appellant urges that the method of assessment was unreasonable and unfair, and that the Oklahoma Constitution, section 8, article 10, provides that all property which is to be taxed ad valorem shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale.

The railway company urges that the question of what was the fair cash value of the railway property is to be answered by what a reasonably prudent investor would pay for it at the valuation date.

On the other hand, appellee contends that this court (1) has jurisdiction to hear this appeal; (2) the appellant's property has been valued and assessed under and pursuant to correct principles, and that no fundamentally wrong principle has been employed; (3) the valuation and assessment are sustained by the evidence embraced in the record; and (4) there has been no discrimination or unfair treatment imposed upon said appellant; and that the action of the State Board of Equalization should be affirmed.

The State Board of Equalization is an integral part of the necessary machinery for the assessment of taxes. 61 C. J. 748; Baker v. Paxton, 29 Wyo. 500, 215 P. 57; Hacker v. Howe, 72 Neb. 385, 101 N. W. 255. It is an administrative body, legislative in character, composed of members chosen from the executive department, a special tribunal, a legal entity, performing public functions, created by the Constitution, and charged with specific duties, one of which we consider in the instant case, to wit, assessment of railroads and public service corporations. Section 21, article 10, state Constitution. The duties of this board, as set forth in said section of the Constitution, are to adjust and equalize the valuation of real and personal property of the several counties in the state, to perform such other duties as may be prescribed by law, and to assess all railroad and public service corporation property.

In the case of Stanley v. Albany County, 121 U. S. 535, 30 L. Ed. 1000, Mr. Justice Fields said:

"In nearly all the states, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the

purposes of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law. They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions. Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, houses, and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the Constitution of some states is complied with when designed and manifest departures from the rule are avoided. To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction before it is reversed."

See, also, Yuma County v. Arizona & S. R. Co. (Ariz.) 243 P. 907; Garysburg Mfg. Co. v. Board of Commissioners, 196 N. C. 748, 147 S. E. 286; McLeod v. Receveur, 71 F. 455, 18 C. C. A. 188; State v. Superior Court of Cochise County, 30 Ariz. 620, 249 P. 768; Old Dominion Min. & Smelt. Co. v. Gila County, 12 Ariz. 224, 100 P. 777; United Globe Mines v. Gila County, 12 Ariz. 217, 100 P. 774; People v. Pitcher, 61 Colo. 149, 156 P. 812; Orr v. State Bd. of Equalization, 3 Idaho, 190, 28 P. 416; State v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S. W. 815; State v. Stewart, 89 Mont. 257, 297 P. 476; Hacker v. Howe, 72 Neb. 385, 101 N. W. 255; New York v. Davenport, 92 N. Y. 604; Briscoe v. McMillan, 117 Tenn. 115, 100 S. W. 111; State v. Fox, 39 Ohio App. 465, 177 N. E. 652; 26 R. C. L. 452, section 408.

The State Board of Equalization in this state has its origin in the state Constitution. Many of its duties require close and careful discretion. At times, ex necessitate, it must be called upon to perform quasi judicial functions in furtherance of effective administrative duties, but in no sense of the term do such acts constitute it a court, commission, or board, or render its conclusions judicial acts so as to come within the scope or meaning of "the judicial power of this state," as contemplated by section 1, article 7, of the Constitution, nor do those duties belong to the judicial department of government within the purview of section 1 of article 4 of said Constitution.

In the case of The Homesteaders v. McCombs, Ins. Comm'r, 24 Okla. 201, 103 P. 691, this court, in considering an action against the Insurance Commissioner, an executive officer of this state, charged only with the duty of the execution of laws in force in the state relating to insurance and insurance companies, held that such officer could not exercise legislative nor judicial functions except as the same were incidental to the administration of his department. In that case this court said:

"The words 'commissions' and 'boards,' as used in connection with the term 'inferior courts,' mean such commissions or boards as judicial power may be vested in pursuant to section 1, art. 7 (Bunn's Ed. sec. 169), of the Constitution, and the hearing and determination of matters by commissions or boards from which appeals may be taken, or to which writs of certiorari, and other like writs, may lie, appears to be the test."

Judicial power is not defined by our state Constitution, but it was considered and defined by Supreme Court of Illinois, in the case of Landowners v. People et al., 113 Ill. 297, as follows:

"Judicial power is the power which adjudicates upon and protects the rights and interests of individual citizens and to that end construes and applies the laws. The term has never been applied to those cases where judgment is to be exercised as an incident to the execution of the ministerial power."

Subsequently, this same court discussed the question of judicial power relative to boards of review in determining the value of property for assessment purposes, and the incapability of sharply defining the classification of the powers of government into three distinct departments, in the case of Conover v. Gatton, 251 Ill. 587. That court said:

"The Constitution provides that 'the powers of the government of this state are

divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.' This classification of the powers of government is incapable of sharp definition, because the duties required of each department will by their nature sometimes encroach upon the field of another. Cooley, in his work on Constitutional Limitations (7th Ed.) 132, says, in considering judicial power, that to adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the law, is the peculiar province of the judicial department. This power, it is said in Landowners v. People, 113 Ill. 296, 'has never been held to apply to those cases where judgment is exercised as incident to a ministerial power.' Executive officers are frequently under the necessity of determining facts from evidence or their own knowledge and of deciding and acting in accordance with such finding. The acts of clerks, sheriffs, and constables in taking and approving bonds, of assessors and boards of review in valuing property for taxation, of city councils in granting or revoking licenses to keep dram-shops or to conduct business of various kinds, of superintendents of schools in granting and revoking teachers' certificates, of the State Board of Health in ascertaining and determining qualifications of physicians to practice medicine and in granting and revoking permits for that purpose, of boards of supervisors, in removing county officers, are all based upon the judgment of the respective officers, requires the exercise of discretion and are in their nature judicial. The power exercised is not, however, that belonging to the judicial department of the government, but is incidental only to the executive or administrative powers conferred by law upon such officers."

In the case of State ex rel. Ellis v. Thorne, 112 Wis. 84, the Supreme Court of Wisconsin held that a Commission, appointed by the Circuit Court of the county pursuant to statutory provision for the purpose of reviewing the county equalization of the assessed value of the property in any county made by the assessors in the various taxing districts therein, was a legitimate exercise of legislative power over the subject of taxation, and that, although the Commission was required to act judicially, yet this was not acting judicially within the meaning of section 2, article 7, of the Constitution, which vested all judicial power in matters of law or equity in certain courts. That court said:

"The idea of counsel for appellant seems to be that, because the commissioners in the performance of their duties must necessarily act judicially, they must be considered, to all intents and purposes, a court, hence an unconstitutional body because not one contemplated by sec. 2, art. VII, of the Constitution. That is manifestly wrong. The Constitution by no means provides that all authority to act judicially is or shall be vested in' the courts mentioned. The term indicated. The language of the Constitution is: 'The judicial power of this state, both as to matters of law and equity, shall be vested in the courts mentioned. The term 'matters of law and equity' refers to the administration of the law in actions and proceedings in courts of law and equity,—the exercise of such power in such matters as was exercised by such courts at the time of the adoption of the Constitution. As said in Callahan v. Judd, 23 Wis. 343, 349, the proper construction of the term 'judicial power in matters of law and equity' is such power as the court, under the English and the American systems of jurisprudence, had always exercised in actions at law and in equity. To act judicially, and to act judicially in a matter at law or in equity,—or, in other words, in actions at law or suits in equity,—are not necessarily the same. Every officer or board that is required, in the administration of the law, to determine whether a duty exists, or determine from facts, by the exercise of judgment, a course of action, within legislative restraints or guides, must necessarily act judicially in a sense. The power often partakes so much of the judicial function that it is spoken of as quasi judicial. Manifestly, an officer or board, or other tribunal other than a court, may act judicially in the sense above mentioned and not do anything falling within the meaning of the term 'judicial power as to matters of law and equity'; and so a judicial officer may perform acts officially outside of such matters,—mere ministerial acts. 17 Am. & Eng. Ency. of Law (2d Ed.) 888, notes: Gleason v. Peerless Mfg. Co., 1 App. Div. 259; People v. Bush, 40 Cal. 346."

In the case of City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, on page 27, Okla. Reports, this court, speaking through Mr. Justice Kennamer, said:

"By section 1, article 7, of the Constitution, the judicial power of this state is vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, as may be established by law. The judicial power here conferred by the Constitution is the power

to hear and determine those matters which affect the life, liberty, or property of the citizens of the state as distinguished from ministerial power or authority, and the judicial power vested in the courts to determine such controversy must find the source of its authority in the supreme sovereign, which is the state. The Constitution of this state confides the judicial power to no courts except those organized under the sanction and regulation of state law."

In the case of Pittsburgh Railway Co. v. Board of Public Works, 172 U. S. 32, it was said:

"These officers, and the manner in which they shall exercise their functions, are wholly beyond the power of the court when so acting. The levy of taxes is not a judicial function. Its exercise by the Constitutions of all the states and by the theory of our English origin, is exclusively legislative, * * * since, in matters of taxation, it is sufficient that the party assessed should have an opportunity to be heard, either before a judicial tribunal, or before a board of assessment, at some stage of the proceedings. Kelly v. Pittsburgh, 104 U. S. 78; Pittsburgh & C. Railway v. Backus, 154 U. S. 421."

See, also, State Railroad Tax Cases, 92 U. S. 575.

In the case of Auditor of State v. Atchison, T. & S. F. R. Co., 6 Kan. 500, the county clerks, constituting a board of appraisers and assessors for the property of a railroad company, met pursuant to statutory provision and assessed the property of said Santa Fe Railroad Company. The Auditor of the state, regarding said assessment too low, appealed from said action of said board to the Supreme Court. Mr. Chief Justice Kingman, speaking for the Supreme Court of Kansas, said:

"The assessment of the property of the state, being then an incident to the taxing power, which is wholly legislative and not judicial, may well be ascertained by agents appointed under the law; but in no sense under our Constitution can such agents be considered judicial officers. It is true, that their duties require of them judgment and discretion; but this is also true of most of the duties of ministerial and executive officers, but this does not make them judicial officers, nor constitute them courts, or render their conclusions judicial acts. * * *"

It appears that appeals from boards of equalization prior to the amendment of 1915, chapter 107, S. L. 1915, were tried in the appellate court de novo, and were held by this court to be judicial rather than administrative. Since the Act of 1915, this court, in Dolese Bros. v. Board of County Commissioners, 151 Okla. 110, 2 P. (2d) 955, held that appeals of this character were no longer triable de novo in the appellate court, but only upon the transcript of the evidence taken before the Board of Equalization, and that no additional evidence could be introduced in the appellate court. Since said amendment this court has not specifically determined whether such an appeal under the law as amended is judicial or administrative. This court, however, did hold, in the case In re Assessment of Western Union Telegraph Co., 35 Okla. 626, 130 P. 565, and Hopper v. Oklahoma County, 43 Okla. 288, 143 P. 4, which opinions were delivered prior to the amendment of 1915, that the Board of Equalization, having the power to equalize assessments and to adjust individual assessments, was a quasi judicial body, from which an appeal would lie to the district court. In that case this court, speaking through Mr. Justice Loofbourrow, said:

"Now, in order to find the fair cash value to be placed upon property for the purposes of taxation, this board may hear evidence both for and against the individual complaining; from this evidence they ascertain the facts and apply thereto the law, decide the controversy, and, in effect, render judgment; their action is final unless appealed from, and cannot be collaterally attacked; in so doing they have exercised judicial power, thereby performing a judicial act. In the performance of their duties they exercise both administrative and judicial functions. The county equalization board is a quasi judicial body, and by reason of the judicial character of a part of the duties to be performed by the county board of equalization, they are, no doubt, such a board as is contemplated by section 1, article 7, of the Constitution."

In this case it is to be observed that the court states that said board is exercising judicial power. We do not consider this an accurate conclusion when considered within the meaning of section 1, article 7, of the Constitution. Such a board exercises quasi judicial functions as an incident to its legislative, ministerial, or administrative duties, but that function does not come within the meaning of the judicial power as vested by the Constitution of this state.

This court has held that the right of appeal from the Board of Equalization was the exclusive remedy of a taxpayer for the purpose of having taxes equalized and adjusted. See Williams v. Garfield Exchange Bank, 38 Okla. 539, 134 P. 863; Rumph, Treas., v. Joines, 38 Okla. 30, 131 P. 1095; In re McNeal, 35 Okla. 17, 128 P. 285; Board

of County Commissioners of Kingfisher County v. Guaranty State Bank, 27 Okla. 736, 117 P. 216. In none of these cases last cited, however, did the court pass upon the question as to whether the appeal was judicial or administrative.

It is contended by appellee that if the Board of Equalization is a quasi judicial body, then an appeal will lie from its decision to the Supreme Court; that even though the Legislature provided the appeal should be administrative rather than judicial, such fact would not divest this court of its jurisdiction under the Constitution, because the statute authorizes the appeal.

The statute in question, section 12661, O. S. 1931, supra, attempts to define the appeal as administrative rather than judicial; the debatable provision of the statute being as follows:

"The appeal herein provided is defined to be an administrative rather than a judicial appeal, and the Supreme Court, in hearing and determining the issues, shall sit in the same capacity as if it were a reviewing board of equalization."

In determining the nature of the appeal, we are confronted with the three great constitutional divisions of the powers of government, the legislative, executive, and judicial.

If this appeal is administrative, this court is required to sit in such a capacity by reason of the legislative enactment in question, engaged in a function totally foreign to judicial power. This court should be zealous to keep within the clear limits of its jurisdiction, which sometimes, with the increasing political power exercised by the other two departments of government, is not always easy to appreciate and clearly define. The judiciary should not yield to, acquiesce in, or usurp powers not intrusted to it by the Constitution.

Mr. Chief Justice Taney, in recognition of these different powers of government, in the case of Luther v. Borden, 7 How. 1, involving litigation arising out of the Dorr Rebellion in Rhode Island in 1841, in speaking of the judicial power, said:

"This tribunal, therefore, should be the last to overstep the boundaries that limit its own jurisdiction."

We find from the time of Hayburn's Case, 1792, 2 Dall. (U. S.) 409, that it has never been within the power of Congress to assign to the judiciary any but judicial acts. That case concerned a motion for a mandamus to be directed to the Circuit Court for the District of Pennsylvania, commanding the court to proceed to hear the petition of William Hayburn who had applied to be put on the pension list of the United States. The Supreme Court of the United States entertained doubt on the question. The matter was held under advisement, and Congress at an intermediate session provided relief in another way. No opinion was delivered, but subjoined to that reported case, illustrative of the same, are the views of the judges of the Circuit Courts of the United States for the districts of New York, Pennsylvania, and North Carolina, as to their interpretation of the Act of Congress, passed March 23, 1792 (1 Stat. 243), entitled:

"An act to provide for the settlement of the claims of widows and orphans, * * * and to regulate the claims to invalid pensions,"

—which act provided that the applicant for the pension should submit his petition to the Circuit Court of the United States, and this court in turn should certify its findings to the Secretary of War, who was authorized to grant or refuse all pensions when he had cause to suspect imposition or mistake, even though they had been allowed by the court. The question arose in reference to interpreting said act of Congress as to whether the power conferred upon said courts was judicial and such a power as the courts should judicially exercise.

The views of these judges were expressed in a letter addressed to the President of the United States. Each of the letters expressed the view that neither the legislative nor the executive branch could delegate to the judiciary any duties but such as were properly judicial and which were to be performed in a judicial manner. The Circuit Court for the District of Pennsylvania, in part, said:

"It is worthy of remark, that in Congress the whole legislative power of the United States is not vested. An important part of that power was exercised by the people themselves, when they 'ordained and established the Constitution.' This Constitution is, 'the supreme law of the land.' This supreme law 'all judicial officers of the United States are bound, by oath or affirmation, to support.'

"It is a principle, important to freedom, that in government, the judicial should be distinct from, and independent of, the legislative department. To this important principle, the people of the United States, in forming their Constitution, have manifested the highest regard. They have placed their

judicial power, not in Congress, but in 'courts.' * * * The business directed by this act is not of a judicial nature. It forms no part of the power vested by the Constitution in the courts of the United States. * * *"

The Circuit Court for the District of North Carolina, in part, said:

"4. That whatever doubt may be suggested, whether the power in question is properly of a judicial nature, yet, inasmuch as the decision of the court is not made final, but may be at least suspended, in its operation, by the Secretary of War, if he shall have cause to suspect imposition or mistake; this subjects the decision of the court to a mode of revision; which we consider to be unwarranted by the Constitution, * * * And we beg leave to add, with all due deference, that no decision of any court of the United States can, under any circumstances, in our opinion, agreeable to the Constitution, be liable to a revision, or even suspension, by the Legislature itself, in whom no judicial power of any kind appears to be vested, but the important one relative to impeachments."

It has been the rule of the Supreme Court of the United States ever since that it would not exercise powers administrative in the last analysis. See Wyman's Administrative Law, page 92. See Keller v. Potomac Elec. Power Co., 261 U. S. 428, 67 L. Ed. 731; Muskrat v. United States, 219 U. S. 346, 55 L. Ed. 246.

In the case of Gordon v. U. S., 117 U. S. 697, appendix, we find an opinion written by Mr. Chief Justice Taney concerning the jurisdiction of the three powers of government, in a case involving an appeal from the Court of Claims. The cause was submitted to the Supreme Court of the United States on December 18, 1863. The court recessed, and the opinion was placed in the hands of the clerk in vacation to be delivered to the Justices on their re-assembly in 1865, but during the recess the Chief Justice died. In that opinion, it was said:

"The Supreme Court does not owe its existence or its powers to the legislative department of the government. It is created by the Constitution, and represents one of the three great divisions of power in the government of the United States, to each of which the Constitution has assigned its appropriate duties and powers, and made each independent of the other in performing its appropriate functions. The power conferred on this court is exclusively judicial, and it cannot be required or authorized to exercise any other. * * * The Constitution of the United States delegates no judicial power to Congress. Its powers are confined to legislative duties, and restricted within certain prescribed limits. * * *

"And it is the duty of this court to maintain it unimpaired as far as it may have the power. And while it executes firmly all the judicial powers entrusted to it, the court will carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution."

See, also, U. S. v. Ferreira, 13 How. 40.

We are of the opinion that this court should stand foursquare on that forceful declaration, and carefully abstain from exercising administrative duties of the legislative and executive departments which may be attempted to be conferred upon this court, when such functions are not strictly judicial in character, and which are not incidental to the discharge of any legitimate judicial function, unless this court is clearly empowered to do so by the Constitution, otherwise confusion of the powers of government is inevitable with the growing tendency in governmental matters in creating a host of additional boards and commissions in furtherance of more effectively carrying out the administrative duties of the legislative and executive departments of government, although fully cognizant of the "necessary areas of interaction" between the departments of government. 37 Harv. L. Review, 1014; Hodges v. Public Service Comm. et al. (W. Va.) 159 S. E. 834.

In the case of Prentis v. Atlantic Coast Line Co., 211 U. S. 210, Mr. Justice Holmes, in considering a bill in equity brought in the Circuit Court to enjoin the owner of the Virginia State Corporation Commission from publishing or taking steps to enforce fixing passenger rates, in speaking of a judicial inquiry, said:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial in kind. * * *"

The immediate question finds harmony in that clear announcement of law. We are not considering a rule applicable for the future, an act legislative in character, as is the case in rate-making, but we are inquiring as to past facts for the purpose of ascertaining whether the Board of Equaliza-

tion has made an assessment of the property in question at its fair cash value estimated at the price it would bring at a fair and voluntary sale as of February 1, 1933, and the inquiry is not directed to future conditions. Such an inquiry by a court possesses attributes characteristic of judicial power, function and action, judicial jurisdiction, remotely inconsistent with administrative, legislative action.

This constitutional duty of assessing the railway company's property at its fair cash value confided to the State Equalization Board by the Constitution is a question of fact for its determination. The determination of such a fact question is essentially and distinctively administrative while it is lodged with said board; and, in the language of Mr. Justice Bradley, in the case of Upshur County v. Rich, supra, 135 U. S. 467, such a proceeding cannot "in any just sense, be called a suit; and that an appeal in such a case to a board of assessors or commissioners having no judicial powers, and only authorized to determine questions of quantity, proportion, and value, is not a suit, but that such an appeal may become a suit if made to a court of tribunal having power to determine questions of law and of fact." That language is applicable in the instant case.

We are not concerned in this case with the determination of the question of value in and of itself. We are called upon to pass upon the reasonableness of that finding by that fact-finding body. In doing so, we determine both questions of law and fact when the parties litigant are before us to contest the fact so found by the State Board of Equalization, the contesting railroad company on the one side and the State Board of Equalization and Tax Commission representing the agency of the state on the other. We inquire through the record whether that value determined by the State Board of Equalization is unjust and unreasonable, and does it essentially work a practical destruction to the property rights of the railway company?

A review of these questions constitutes a judicial inquiry, requiring "processes of law for its determination." We are of the opinion that it comes within the meaning of a judicial inquiry announced by Mr. Justice Holmes:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." Prentis v. Atlantic Coast Line Co., 211 U. S. 210.

In a recent case, September 4, 1933, Rosslyn Gas Co. v. Fletcher, 5 Fed. Sup. 25, the federal district court of the Eastern district of the state of Virginia, in considering legislative process of rate-making involving the State Corporation Commission, said:

"Constitutional language conferring powers on an appellate court should be construed as intended to include only those powers consistent with the discharge of the inherent judicial functions of the court. It would require clear and strong language to justify such a construction as would divest the court of its primary duty, that of judicial review."

We are not unmindful of expressions in some of our former opinions tendingly discordant to the import of the analysis and the conclusions we have arrived at herein; but, nevertheless, we are of the opinion that the functions of this court should be confined primarily to inquiries of a judicial nature consonant with its inherent judicial power, which is created by and has its origin in the Constitution of this state; and that the valuation of property for purposes of taxation is an incident to the taxing power, which is vested in the legislative power of this state and is in no sense judicial.

The act in question provides for an appeal to this court for the purpose of reviewing the action of the Board of Equalization in the assessment of the property of a railroad company. The Legislature was not inhibited by the Constitution to provide for such an appeal, but we conclude that in so far as said appeal is attempted to be designated a legislative or administrative appeal, it was not within the power of the legislative branch of government to confer legislative or administrative power upon this court except as provided by the Constitution. See In re County Commissioners of Counties Comprising Seventh Judicial District, 22 Okla. 435, 98 P. 557; Williams v. City of Norman, 85 Okla. 230, 205 P. 144; State ex rel. King v. H. F. Wilcox Oil & Gas Co., 162 Okla. 237, 19 P. (2d) 572; Sterling Refining Co. v. Walker, 165 Okla. 45, 25 P. (2d) 312; Shawnee Gas & Electric Co. v. Corporation Commission, 35 Okla. 454, 130 P. 127; Pioneer Tel. & Tel. Co. v. City of Bartlesville, 40 Okla. 583, 139 P. 694; Hayburn's Case, 2 Dall. 410; U. S. v. Ferreira. 13 How. 40; Gordon v. U. S., 117 U. S. 697; B. & O. v. I. C. C., 215 U. S. 216, 30 Sup. Ct. 86; Muskrat v. U. S., 219 U. S. 346, 31 S. Ct. 250; Keller v. Potomac Electric Power

Co., 261 U. S. 428, 43 S. Ct. 445; Federal Radio Comm. v. Gen. Electric Co., 281 U. S. 464, 50 S. Ct. 389; Federal Radio Comm. v. Nelson Bros. B. & M. Co., 289 U. S. 266, 53 S. Ct. 627; Aetna Ins. Co. v. Commonwealth (Va.) 169 S. E. 859; Rosslyn Gas Co. v. Fletcher, 5 Fed. Sup. 25.

Counsel for appellee in their brief state:

"The purpose of the statute as amended is to require all public service corporations to develop their case fully before the State Board of Equalization by introducing before that board all the proof necessary to a just and proper valuation and assessment. The practice heretofore has been for such corporations to introduce just such testimony as they desired before the Board of Equalization, leaving that board without an adequate basis to make a fair or intelligent assessment, from which action then the corporation would go direct to federal court by suing out a writ of injunction against certification of the assessment to the various county treasurers. The action of the board having often been taken without adequate data or information, the state is at a great disadvantage to sustain an assessment made largely from conjecture. Where an administrative appeal is provided, as is the intention of the statute under which such appeals are now taken from the Board of Equalization, the taxpayer must introduce all the evidence upon which he wishes to base his complaint at the action of the board in making the assessment. After this testimony has been properly acted on by the board, originally, if the taxpayer is still dissatisfied, he lodges his appeal with this court, which court reviews the assessment in the same capacity and manner that the Board of Equalization did and makes such correction, alteration, or modification as justice may require. From this act of the Supreme Court, or rather from the action of the board in attempting to carry out the judgment of this court, the same right to go into a court of equity obtains after the court has acted upon the appeal as was available to the taxpayer directly from the judgment of the board itself."

In a case of the instant character it becomes important to know when the railroad company has completed or exhausted its administrative remedy, and when the justiciable stage may begin, so that if any party shall feel aggrieved such party may choose a forum for relief.

We find stress of this contention carefully analyzed as to when the administrative stage has ended and the judicial power begins, and an appeal pertinent to the question involved herein, in the case of Nelson, Co. Treas., v.

First Nat. Bank of Sioux City, 42 Fed. (2d) 30, wherein it was said:

"A state may clothe its courts with purely legislative (administrative) powers and, when exercising those powers, the court is not acting as a court but its officers and machinery are being used in its legislative character. Federal Radio Commission v. General Electric Co., 50 S. Ct. 389, 74 L. Ed. 969, opinion of Supreme Court filed May 19, 1930; Prentis v. Atlantic, etc., Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150. However, it is always a vital question whether the court is acting in a judicial or in an administrative capacity, because different important consequences flow from each. As soon as the administrative stage of action is completed, the judicial may begin and not before if that administrative procedure affords adequate opportunities of protection. Where the judicial stage begins, the parties may resort to any tribunal (state or federal) open to them and cannot be confined to the state courts through the mandate of state statutes. If in this appeal from the board to the district court that court acts judicially, then the administrative stage has ended with the action of the board of review, and thereafter the complaining party cannot be confined to the appeal to that court, but can choose any forum available to him. We think the district court in such an appeal acts judicially. The reasons are as follows: the statute itself (section 7134) declares that the court 'shall hear the appeal in equity'; it declares, also, that it shall 'determine anew all questions arising before the Board which relate to the liability of the property to assessment or the amount thereof'; such decisions by the district court pass, as ordinary judicial proceedings, to the state Supreme Court by appeal (First Nat. Bank v. Board of Review, 200 Iowa, 131, 204 N. W. 223; First Nat. Bank v. Board of Review, 199 Iowa, 1124, 201 N. W. 769); the questions passed upon are as to existing matters and not as to future conditions. All of the above are characteristics of judicial action and some of them are inconsistent with legislative action."

In the case of City Bank Farmers Trust Co. v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 261, 78 L. Ed., Mr. Justice Roberts, on January 8, 1934, delivered an opinion involving an appeal from the district court for Eastern Pennsylvania. The action sought to enjoin the Attorney General and Secretary of Revenue of the Commonwealth of Pennsylvania from attempting to impose and collect an inheritance tax, wherein the answer asserted and the trial court found that the appellant had an adequate remedy at law, as it could appeal from the appraisement which had been made to the county court, which had jurisdiction to pass on both the amount of the tax and the legality of its imposition. In the motion it was said:

"2. Since the Dauphin county court is empowered, upon appeal from the action of the appraiser, to determine all questions, including both valuation and liability for the tax, the contention is made that its function is at least in part administrative, and a suit for injunction may not be entertained by a federal court prior to the decision of the state court. Prentis v. Atlantic Coast Line Co., 211 U. S. 210; Porter v. Investors Syndicate, 286 U. S. 461. The statutes under consideration in those cases delegated legislative power of regulation to an administrative body and vested a revisory power in a court. As has repeatedly been held, the action of the court in such a matter is legislative rather than judicial so that one who has not pursued the legislative process to a conclusion cannot turn to a court of equity for relief from a regulatory order which is not the final word of the constituted state authority. But other decisions make it clear that while the action of the appraiser in a case like the present is purely administrative, the function of the court upon appeal is judicial in character, if, when the case if brought into the court, the commonwealth becomes plaintiff and the taxpayer defendant, and the action is tried as an ordinary action, resulting in a judgment, which is final and binding on the parties, subject only to appeal to a higher state court, as permitted by the act. This renders the proceeding judicial, and gives it the character of a suit or action at law. * * *

"If the Dauphin county court were by the act of Assembly granted only the right to revise the valuation of the appraiser and precluded from considerating any other question, its proceedings would be purely administrative, and the contention that the appellant had failed to pursue to the end its administrative remedy would be sound (Upshur County v. Rich, 135 U. S. 467) at all events where the valuation is a subject of controversy. * * *

"We are of opinion that upon the making of the appraisement the administrative procedure is at an end and the appellant can thereafter resort to a federal court of equity to restrain further action by the state officers if in violation of constitutional rights."

In the case of Federal Radio Comm. v. Nelson Bros. Bond & Mtg. Co., 289 U. S. 266, 53 Sup. Ct. 627, at pages 275, 276, Mr. Chief Justice Hughes said as follows:

"* * * No longer is the court entitled to revise the commission's decision and to enter such judgment as the court may think just. The limitation manifestly demands judicial, as distinguished from administrative, review. Questions of law form the appropriate subject of judicial determinations. * * * Whether the commission applies the legislative standards validly set up, whether it acts within the authority conferred or goes beyond it, whether its proceedings satisfy the pertinent demands of due process, whether, in short, there is compliance with the legal requirements which fix the province of the commission and govern its action, are appropriate questions for judicial decision. These are questions of law upon which the court is to pass. The provision that the commission's findings of fact, if supported by substantial evidence, shall be conclusive unless it clearly appears that the findings are arbitrary or capricious, cannot be regarded as an attempt to vest in the court an authority to revise the action of the commission from an administrative standpoint and to make an administrative judgment. A finding without substantial evidence to support it—an arbitrary or capricious finding—does violence to the law. It is without the sanction of the authority conferred. And an inquiry into the facts before the commission, in order to ascertain whether its findings are thus vitiated, belongs to the judicial province and does not trench upon, or involve the exercise of, administrative authority. Such an examination is not concerned with the weight of evidence or with the wisdom or expediency of the administrative action. (Citing cases.) * * *

"The controlling question is whether the function to be exercised by the court is a judicial function, and, if so, it may be exercised on an authorized appeal from the decision of an administrative body. We must not 'be misled by a name, but look to the substance and intent of the proceeding.' (Citing cases.) 'It is not important,' we said in Old Colony Trust Co. v. Commissioner, supra, 'whether such a proceeding was originally begun by an administrative or executive determination, if, when it comes to the court, whether legislative or constitutional, it calls for the exercise of only the judicial power of the court upon which jurisdiction has been conferred by law.' Nor is it necessary that the proceeding to be judicial should be one entirely de novo. When on the appeal, as here provided, the parties come before the Court of Appeals to obtain its decision upon the legal question whether the commission has acted within the limits of its authority, and to have their rights, as established by law, determined accordingly, there is a case or controversy which is the appropriate subject of the exercise of judicial power."

Holding, as we do, that the appeal from the Board of Equalization is judicial and not administrative, we consider whether the Board of Equalization has properly ascertained the value of the property of the railroad for the fiscal year in question.

The members of such board are presumed to be members of responsibility, possessed with judgment and reasonable ability to ap-

preciate taxable values. They must use reasonable discretion and act fairly and honestly on the facts presented to them. It is their constitutional duty to determine the ad valorem value of the property in question. The determination of such value for assessment reduces itself in final analysis to an "informational function," a duty which "was merely to exercise an informed and honest judgment in fixing values for purposes of taxation," a function essentially and distinctively administrative, fact-finding. See Ex parte Williams, 277 U. S. 267; Southern Ry. Co. v. Watts, 260 U. S. 519, 528.

The board, in determining the valuation of railroad corporate property, has a wide discretion in the exercise of its powers. State v. State Board of Education (Mont.) 17 P. (2d) 68, 18 P. (2d) 804. It must use reasonable discretion and act fairly and honestly in matters which carry weighty presumptions of correctness. Colorado Tax Commission v. Midland Terminal R. Co. (Colo.) 24 P. (2d) 745. It is not required to base its determination of values on any particular kind of quantum of evidence in the absence of statutory provisions, but its decision must not be arbitrary and capricious. It may act on information which is satisfactory to it, after it has given an opportunity to the railroad corporation to submit any evidence relative to said valuation. Our Constitution and our statutes do not establish a standard of evidence for the guidance of the Board of Equalization. Provision has been made by the statute for the receiving of evidence and transmitting the record to this court.

In the case of Ill. Cent. Ry. Co. v. Green, 244 U. S. 555, 61 L. Ed. 1309, the Supreme Court of the United States held that the action of the Equalization Board must be sustained unless it was made to appear that the board adopted a fundamentally wrong principle. In that case it was said:

"The district court properly held that the action of the board must be sustained unless it was made to appear that they had adopted a fundamentally wrong principle or had been guilty of fraud. It held, further, that no fundamentally wrong principle was involved in determining whether such a railroad system should be valued on the capitalization of income or on the stock and bond plan; or, if the former, what rate of interest should be used in capitalizing, or how many years' earnings should be considered, or what was in fact the amount of net income for a given year; or, if the stock and bond plan was adopted, what was the value of the stock and bonds; and that on these and similar matters the action of the board, in the ab-

sence of fraud, was binding upon the court. In this we concur."

It appears that in determining the valuation of the corporate property for tax purposes, there is no hard and fast rule to apply to the methods which must be employed. There is no single factor which governs in reaching a determination of this question. In every case the standard of value to be determined is that amount for which the railroad property would sell at a fair and free sale, and various factors for determining the value must or should be given reasonable consideration. These matters are within the discretion and judgment of the board authorized by the Constitution to ascertain its value. Much might be said on this question.

In the case of Central Realty Co. v. Board of Equalization and Review (W. Va.) 158 S. E. 537, it was said:

"So long as business conditions are normal, it is possible to arrive at the statutory value. But does the law require the rule to be strictly applied to any particular year in which property, due to depression and unhealthy business conditions, has no prospective buyer at any figure? * * * Was it the purpose of the statute to jeopardize the machinery of state, county, district, and municipality, during a depression, or was it enacted to cover ordinary conditions existing over a period of years? To ask the question is to answer it. Values of real estate and fixtures thereon are more or less constant over a period of years. What it was valued at last year may have a bearing on this year's assessment.

"* * * The fact that property cannot be sold at a particular period of depression should not be taken as conclusive that its value has been materially reduced. * * * While the income producing capacity of property is an important factor in determining its value, it is ordinarily not the sole thing for consideration. 3 Cooley on Taxation (4th Ed.) p. 2308. And, further, if the valuation is based principally on earnings, the average earnings and expenses for a series of years, or for such time as is reasonably available, must be considered. Idem, pp. 2311, 2312."

In the case of Chicago, B. & Q. R. Co. v. Babcock, 204 U. S. 585, 51 L. Ed. 636, Mr. Justice Holmes said:

"The board was created for the purpose of using its judgment and its knowledge. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; State v. Savage, 65 Neb. 714, 768, 769, 91 N. W. 716; In re Cruger, 84 N. Y. 619, 621; San Jose Gas Co. v. January, 57 Cal. 614, 616. Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights.

The state has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end."

The presumption exists in reviewing the assessment of the State Board of Equalization in favor of the correctness of the determination of the value fixed by the board. See Woods v. Lincoln Gas & Electric Light Co., 74 Neb. 526, 104 N. W. 931; State ex rel. v. Williams, 160 Wis. 648, 152 N. W. 450; State ex rel. Miller v. Thompson, 151 Wis. 184, 138 N. W. 628; Simmons Coal Co. v. Bd. of Review, 282 Ill. 396, 118 N. E. 753; Hawkeye Portland Cement Co. v. Bd. of Review, 205 Iowa, 161, 217 N. W. 837; Sioux City Bridge Co. v. Bd. of Review, 192 Iowa, 1224, 184 N. W. 733; Marion County v. Wilson, 105 Ky. 302, 49 S. W. 8; Hatcher & Co. v. Gosper County, 95 Neb. 543, 145 N. W. 993; and Appeal of Du Bois, 293 Pa. 186, 142 Atl. 134. See, also, Cooley on Taxation (4th Ed.) vol. 3, p. 2442; and 61 C. J. 611.

The burden is upon the party assailing the correctness of this determination of value. South & N. A. R. Co. v. State, 193 Ala. 149, 69 So. 542; Wharton v. Abbott, 42 N. J. L. 109; Union Sulphur Co. v. Reid, 271 Fed. 978; Phillips v. Board of County Commissioners of Douglas County, 83 Colo. 82, 262 P. 523; Union Pacific R. Co. v. Hanna, 73 Colo. 162, 214 P. 550; and Bowman-Hicks Lmbr. Co. v. Cole, 151 La. 303, 91 So. 744; See, also, Cooley on Taxation (4th Ed.) v. 3, page 2442; and 61 C. J. 612.

These presumptions obtain, to wit:

(1) "Until the contrary is made to appear, the law presumes that officers have discharged the duties which the law imposes upon them." Southern Surety Co. v. Waits, 45 Okla. 513, 146 P. 431; Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 P. 213; Board of Commissioners v. Field, 63 Okla. 80, 162 P. 733; and Hicks et al. v. Sanders, Co. Treas., 132 Okla. 242, 269 P. 297.

(2) That the board made due investigation and obtained sufficient data on which to base its assessment. St. Louis Electric Bridge Co. v. Koeln, 315 Mo. 424, 287 S. W. 427.

(3) That the Equalization Board is composed of members familiar with details of assessment of property. Chicago N. W. R. Co. v. State Bd. of Equal. & Assessment, 121 Neb. 592, 237 N. W. 657; 238 N. W. 520.

(4) That when the State Board of Equalization values railroad property for assessment purposes, it acts fairly and impartially in fixing such valuation. Chicago, R. I. & P. Ry. So. v. State, 112 Neb. 727, 200 N. W. 996.

(5) That the board acted with honest motives, and exercised honest judgment in fixing values. People v. Millard, 307 Ill. 556, 139 N. E. 113.

Such presumption can only be overcome by clear and convincing proof. See Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317; People v. Millard (Ill.) 139 N. E. 113; People v. Hines, 293 Ill. 419, 127 N. E. 693; People v. Atchison, T. & S. F. Ry. Co., 261 Ill. 156, 103 N. E. 616; People v. Atchison, T. & S. F. Ry. Co., 261 Ill. 33, 103 N. E. 614; Lake Charles Railway, Light & Water Works Co. v. Reid, 152 La. 476, 93 So. 743; Baker-Lawhorn, & Ford v. Louisiana Tax Commission, 15 La. App. 189, 130 So. 642; Robertson v. U. S. Nursery Co., 121 Miss. 14, 83 So. 307; Pittsburgh Silver, Peat, Gold Mining Co. v. Tax Commission of Nevada, 49 Nev. 46, 235 P. 643; Abreu v. State Tax Commission, 29 N. M. 554, 224 P. 479; Jackson v. State Tax Comm, 29 N. M. 561, 224 P. 482; People ex rel. Mid-Crosstown Ry. v. State Tax Commission, 192 N. Y. Supp. 388; Norpia Realty Corp. v. Thurston County, 131 Wash. 675, 231 P. 13; Washington Union Coal Co. v. Thurston County, 105 Wash. 208, 177 P. 774, 2 A. L. R. 1546; Oregon-Washington R. & Nav. Co. v. Thurston County, 98 Wash. 218, 167 P. 930 (Error dismissed, 246 U. S. 678, 62 L. Ed. 934); Vancouver Water Works Co. v. Clark County, 55 Wash. 112, 104 P. 180; Northern Pacific Railway Co. v. Pierce County, 55 Wash. 108, 104 P. 178.

The State Board of Equalization, in assessing the property of the railway company which operated in two or more states, adopted the "unit rule", under which the property of the railway company is valued as a whole and a proper portion thereof is taken as the valuation on the basis of which the tax is computed in each of the states in which the railway company operates. This basis for assessing property is sustained by the following authorities: American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 43 L. Ed. 899; Sanford v. Poe, 165 U. S. 194, 41 L. Ed. 683; and In re Assessment of Western Union Telegraph Co., 35 Okla. 626, 130 P. 565.

No objection has been made to this rule, and it appears that the railway company and the State Board of Equalization are agreed that 14.457 per cent. of the railway company's system value is allocatable to Oklahoma for 1933-1934 ad valorem tax purposes.

In assessing and fixing the value of the railway company property for the tax year 1933-1934 at its fair cash value estimated at a price it would bring at a voluntary sale,

the State Board of Equalization considered the following factors:

"(a) The average annual net railway operating income for the years 1928 to 1932, both inclusive—capitalized at 6%; (b) The average market value of appellant's stocks and bonds as of February 1st for the years 1929 to 1933, both inclusive; and (c) reproduction costs new less depreciation."

The factors and figures considered by the State Board of Equalization in assessing the property in question for ad valorem taxes for the tax year 1933-1934, as shown by the record, was as follows:

1. Value of System—Capitalization of Earnings:

| Net Railway Operating Income | | | | 1928 | $4,973,567.40 |
|---|---|---|---|---|---|
| " | " | " | " | 1929 | 5,148,922.04 |
| " | " | " | " | 1930 | 3,770,777.82 |
| " | " | " | " | 1931 | 2,619,428.61 |
| " | " | " | " | 1932 | 957,933.20 |

| | | |
|---|---|---|
| Total | | 17,470,629.07 |
| Average for 5 years | | 3,494,185.81 |
| Capitalized at 6% | | 58,235,430.00 |

2. Value of System—Stock and Bond Method.

| Stocks and Bonds Values | | | | 2-1-29 | $102,773,875.00 |
|---|---|---|---|---|---|
| " | " | " | " | 2-1-30 | 99,274,472.00 |
| " | " | " | " | 2-1-31 | 86,726,760.00 |
| " | " | " | " | 2-1-32 | 54,501,689.00 |
| " | " | " | " | 2-1-33 | 47,824,790.00 |

| | |
|---|---|
| Total | 391,101,586.00 |
| Average | 78,220,317.00 |

| | |
|---|---|
| 3. Reproduction—new less depreciation | 54,198,003.00 |
| System value, average of three methods | 63,551,250.00 |

Allocation to Oklahoma:

| | |
|---|---|
| Railway operating revenues | 12.81% |
| Main and branch operated mileage | 16.19 |
| All track mileage | 14.00 |
| Locomotive miles | 14.07 |
| Car miles | 15.40 |
| Ton miles revenue freight | 14.63 |
| Reproduction—new less depreciation | 14.20 |
| Average of 7 methods of allocation | 14.457% |
| Oklahoma value 14.457% of $63,551,250 | $9,187,604 |

From this data the State Board of Equalization determined the value of the railway company to be $63,551,250 and apportioned 14.457 per cent. of said amount, or the sum of $9,187,604 thereof, to the state of Oklahoma.

The portion of the system value allocated to Oklahoma was equalized and assessed at a fraction less than 40 per cent. of the value thereof, to wit, $3,644,522, for ad valorem tax purposes for said tax year 1933-1934.

The railway company contends that the method of assessment is unreasonable and unfair: First, because the net railroad operating income of 1928 and 1929 is not an accurate or reasonable element of the company's earnings and earning value in 1933; second, because the market value of the railroad company's stocks and bonds on February 1, 1929, and February 1, 1930, is not a fair and reasonable element of their market value in 1933; third, because the cost of the railroad or its cost of reproduction new less depreciation as of another period, and especially when it was not earning a fair return on such cost, is not a fair or reasonable measure of value of the property of said company for taxation purposes; fourth, because 6 per cent. is not a fair return to be used in computing the value of a railroad by the capitalization of its net railway operating income.

The railroad company has presented an uncontroverted statement showing that the net railway operating income and the assessed valuation in Oklahoma for the years 1923 to 1933, inclusive, were as follows:

| Year | Net Railway Operating Income K. C. S. System | Assessed Value of K. C. S. Property |
|---|---|---|
| 1923 | $3,537,100.80 | $4,692,975 |
| 1924 | 3,864,376.63 | 4,692,975 |
| 1925 | 4,493,426.17 | 4,692,975 |
| 1926 | 5,003,843.40 | 4,692,975 |
| 1927 | 4,768,019.20 | 4,692,975 |
| 1928 | 4,973,567.40 | 4,754,142 |
| 1929 | 5,148,922.04 | 4,780,930 |
| 1930 | 3,770,777.82 | 4,799,537 |
| 1931 | 2,619,428.61 | 5,084,717 |
| 1932 | 957,933.20 | 4,067,773 |
| 1933 | 957,933.20 (estimated) | 3,644,522 |

The decrease in net railway operating income from 1928 to 1932, as shown by said statement, amounted to $4,015,634.20, or 80.74 per cent., while the reduction in the assessed valuation of the railway company's property over the same period amounted to $686,369, or 14.44 per cent. It is also observable that the net railway operating income of the system in the year 1923 is substantially the same as it was in the year 1930; that the net operating income increased from 1923 to and including its peak in the year 1929; that the years 1928 and 1929 reveal substantially the same net operating income, there being a difference of income during those years of approximately $174,000. During the year 1929 the net railway operating income as shown by said statement amounted to $5,148,922.04, while the income during the year 1932 dropped below the one million dollar mark, to wit: $957,933.20. The net operating income during the years 1928 and 1929 exceeds the sum of ten million dollars, while the net income for the three years 1930, 1931, and 1932, exceeds slightly $6,300,000. In other words, it is plainly apparent that said income from the railway system during the years 1930, 1931, and 1932, fails to meet the income during the years 1928 and 1929, by approximately $3,700,000 in round figures, and that the net railway income of the two years of 1928 and 1929 constitutes 58

per cent. of said income during the last five year of said tabulation, to wit, the years, 1929 to 1932, inclusive.

The court takes judicial knowledge that there has been an era of depression, nation and world wide. This has had its destructive influences on railroad property as well as other property. The aforesaid statement reveals the peak of the railway net operating income occurring during the years 1928 and 1929, covering a continuous period of ten years. It shows a gradual increase of income from $3,537,100.80, in 1923, to $5,148,-922.04, in 1929. We do not think it tenable that those two years, 1928 and 1929, should be used in reflecting an assessed valuation of the railway property in 1933.

It is true that no particular method of valuation is set forth in the Constitution or the statutes for the guidance of the Board of Equalization in determining the valuation of the property in question. However, we cannot be oblivious to that which we are confronted with on every hand. We have been passing through an entirely different economic and industrial era since the years 1928 and 1929. Panicky conditions have prevailed. The organic condition of the railroad, its ties, rails, equipment, etc., is perhaps substantially the same, usual wear and tear excepted, but the figures conclusively prove that there has been a loss of earning power occasioned by other competing transport agencies, bus lines, truck lines, and air lines. The railway company asserts with confidence that this loss of business will not return to the railway company.

In the light of these facts we are of the opinion that the taxable value of the railway company as of February 1, 1933, cannot be determined by measuring the peak of prosperity in the years 1928 and 1929 with the income derived during the commercial disaster of the business in the years 1930, 1931, and 1932, and that the years 1930, 1931, and 1932 constitute a measurably substantial period of time for the purpose of sufficiently reflecting the proper assessable value of the property in question fixed as of February 1, 1933.

As we view the instant case, we conclude that the Legislature cannot confer upon this court an appeal of this character so that it may be considered by this court as an administrative appeal. This court reviews this appeal under the statute in question judicially and not administratively. When the State Board of Equalization has determined the valuation of the property, the administrative procedure has come to an end.

The State Board of Equalization is not a commission or board established by law within the meaning of sections 1 and 2 of article 7 of the Constitution, but has its creation and origin in the Constitution pursuant to section 21, article 10, thereof. Its duties are defined therein, and further detailed by section 12656, O. S. 1931 (amended by Laws 1933, c. 100), and section 12657. O. S. 1931. Those duties are essential and distinctively legislative, administrative, in character. Such a board does not come within the vestment of judicial power of this state, as contemplated by section 1 of article 7 of the state Constitution; nor do its duties properly belong to the powers of government allocated to the judicial department within the meaning of section 1 of article 4 of said Constitution.

The cause is reversed and remanded to the State Board of Equalization, with directions to exclude as a factor in determining the valuation of the property in question the net railway operating income for the years 1928 and 1929, and to also exclude the stock and bond values for the same years.

The valuation in question, modified as directed, in all other respects is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, and BAYLESS. JJ,, concur. ANDREWS, WELCH, and BUSBY, JJ., absent.

On Rehearing.

SWINDALL, J. The opinion inadvertently excluded the stock and bond values for the years 1928 and 1929, when it was intended to exclude the stock and bond values on February 1, for the years 1929 and 1930, respectively, as a factor in determining the valuation of property in question, and the opinion is accordingly modified to show this correction.

Rehearing denied.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. BAYLESS and WELCH, JJ., absent.